STATE of Missouri, Respondent,

v.

Kenneth Lee KENLEY, Appellant.

No. 66252.

Supreme Court of Missouri,
En Banc.

June 25, 1985.

Rehearing Denied Aug. 7, 1985.

C.J. Larkin, Columbia, for appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

GERALD M. SMITH, Special Judge.

Defendant was convicted of capital murder (Sec. 565.001 RSMo 1978 repealed October 1, 1984, now first degree murder Sec. 565.020 RSMo Cum.Supp.1984) and sentenced to death. Because of the punishment imposed original appellate jurisdiction is in this court. Mo. Const. Art. V, Sec. 3. Pursuant to the mandate of Sec. 565.014 RSMo 1978 (now Sec. 565.035 RSMo Cum. Supp.1984) we review both the errors asserted and the sentence imposed. We affirm.

On January 1, 1984, Defendant came to the home where he was residing with a large number of handguns. He kept one of these, a silver .38 caliber pistol. The next day he purchased some .38 hollow point ammunition and with a friend practiced with the pistol by shooting at cans and trees. On January 3 at approximately 11:00 p.m. Defendant borrowed a brown Ford station wagon from his host and drove to the Kater Inn Package Store in Poplar Bluff. He entered the store with his pistol and threatened to kill the salesman unless the cash register money was given to him. The money was given to him. While this was transpiring a female customer, Sandra Buttry, entered the store and was ordered to lie on the floor. Upon completion of the robbery Defendant grabbed Ms. Buttry's arm and forced her to leave with him. Once outside he pointed his pistol at Ms. Buttry's male companion, forced Ms. Buttry into the Ford station wagon and drove away. Upon Ms. Buttry's inquiry as to why he had taken her, Defendant stated he was "going to get a piece of ass." He then ordered Mrs. Buttry to perform fellatio on him. She opened the car door and jumped out of the car but was shot in the back by Defendant as she exited the car. As she was receiving assistance by a passing motorist Defendant drove back to where she was and then proceeded to the South. Ms. Buttry's wound was not fatal.

Approximately half an hour later Defendant entered the Blue Moon Tavern in Poplar Bluff and announced to the eight persons inside, "This is a holdup. Everyone hit the floor." When the people in the tavern did not immediately respond Defendant stated, "I said this is a holdup. Hit the floor. I mean business and I'll make an example out of you." He then aimed his pistol at Ronald Felts, one of four people standing near a pool table, and from a distance of approximately 10 feet shot Felts through the temple. Felts died virtually instantaneously. With the occupants on the floor Defendant ordered the tavern owner, Ms. White, to open the cash register. He then proceeded to the back of the bar to collect the money and while there fired a shot over the heads of Ms. White and the bartender, Randy Jenkins. After collecting the money he ordered White and Jenkins to leave with him, but when they reached the end of the bar Defendant ordered Jenkins to the floor and

shot him in the jaw. Jenkins recovered from the wound. Defendant then stated to White, "Bitch, you're going with me. You're going to give me head." In attempting to leave Defendant got the Ford station wagon stuck on the curb, so he and Ms. White returned to the tavern to get her keys. There he threatened to kill a fifteen year old girl if she had called the police, stating that he had already killed once and would do it again. Defendant and Ms. White then entered her vehicle. Defendant fired a shot at a bystander and the automobile left with Ms. White driving. Through a ruse she managed to open the car door, jumped out and ran back toward the tavern. Defendant got control of the car and drove on.

In less than half an hour Defendant entered the Coachlight Motel in Poplar Bluff and after robbing the proprietor at gunpoint ordered her to leave with him. Her husband, who had been sleeping, entered the room and Defendant stated, "I'll kill you. I've killed already tonight and I'll kill you." A struggle between Defendant and the husband ensued which resulted in Defendant being pushed out the door. During their struggle the pistol held by Defendant and pointed at the husband "clicked" but did not fire. Sometime later that morning Defendant entered Junior's Food Mart in Corning, Arkansas, and, after firing a shot into the ceiling, demanded a car and driver. He stated, "I've done killed once tonight. Wouldn't bother me to do it again." Somebody in the store pointed out his own car and told Defendant the keys were in it. Defendant drove away in that car and was arrested as he left the parking lot. Defendant offered no evidence. He was 23 at the time of the offense and had one felony conviction for a Class C Felony of Stealing for which he served three years in prison. He submitted only his age as a mitigating factor.

■ Defendant first premises error upon the failure of the trial court to sustain his motion in limine to prevent introduction of the other crimes committed on the night of the murder and in allowing introduction of such evidence. No objection was interposed to the evidence at the time it was offered at trial despite the trial judge's admonition that he would expect such objections and would decide on admissibility on an item to item basis. Such an objection is required to preserve the matter for appellate review as a ruling in limine is interlocutory only and is subject to change at the time the evidence is offered. *State v. Woods*, 639 S.W.2d 818 (Mo.1982) [3]. Because of the seriousness of the sentence imposed we will review the matter under plain error. *State v. Gilmore*, 681 S.W.2d 934 (Mo. banc 1984) l.c. 941. The testimonial and physical evidence of Defendant's guilt was overwhelming.

■ As a general rule evidence of uncharged crimes is inadmissible unless that evidence has a "legitimate tendency to establish defendant's guilt of the crime charged." Such evidence becomes admissible when it tends to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or (5) identity. *State v. Williams*, 652 S.W.2d 102 (Mo. banc 1983) [9]. It is the burden of the prosecution to prove to the satisfaction of the jury every element of the crime beyond a reasonable doubt and the state "should not be unduly limited as to the manner of satisfying this quantum of proof." *State v. Clemons*, 643 S.W.2d 803 (Mo. banc 1983) [1–3]. The trial court is in the best position to evaluate whether the potential prejudice of relevant evidence outweighs the relevance. *State v. Shaw*, 636 S.W.2d 667 (Mo. banc 1982) [6].

■ It was the state's burden here to convince the jury that Defendant killed Felts unlawfully, willfully, knowingly, deliberately, and with premeditation. Although Defendant's conduct and statements at the time he shot Felts may have sufficed to establish those elements sufficiently to withstand a motion for directed verdict we cannot say they were sufficient alone to convince a jury. Mental state, in this case deliberation and premeditation, is

rarely capable of direct proof. *State v. Flynn,* 541 S.W.2d 344 (Mo.App.1976) [2, 3]. Findings of deliberation and premeditation depend usually "upon an inference reasonably drawn from the evidence and circumstances surrounding the act." *State v. Wood,* 596 S.W.2d 394 (Mo. banc 1980) [7, 10]; *State v. Zeitvogel,* 655 S.W.2d 678 (Mo.App.1983) [20]. Defendant's conduct in acquiring a gun and bullets, practicing with the gun, setting out on a continuing crime spree in which he robbed business establishments and kidnapped women for sexual purposes, evidences a common scheme or plan pointing to Defendant as the participant in the robbery which resulted in Felts' death. His shooting of Ms. Buttry followed by his almost immediate robbery of the Blue Moon and shooting of Felts and Jenkins, was evidence of a cool state of mind and that the act of shooting Felts was "performed as a free act of the will, ... not under the influence of a violent passion suddenly aroused by some provocation." *State v. Zeitvogel, supra.* His subsequent robberies and his statements that he had killed earlier and would kill again are also indicative of a deliberative state of mind. *State v. Wood, supra,* [11]. His statements are also admissions identifying Defendant as the murderer of Felts. Conduct before and after the commission of the charged crime is relevant where it relates to the elements of the charged crime. *State v. Williams, supra,* [10]; *State v. Shaw,* 636 S.W.2d 667 (Mo. banc 1982) [5–7]; *State v. Greathouse,* 627 S.W.2d 592 (Mo.1982) [6]. We find no error in the admission of the evidence complained of.

■ Defendant next challenges the finding of the jury that two aggravating circumstances were present. The aggravating circumstances found were (1) the murder was committed for purposes of receiving money and (2) that by his act of murdering Felts Defendant knowingly created a great risk of death of more than one person in a public place. Finding at least one aggravating circumstance is a threshold requirement before the jury can recommend the death penalty. Sec. 565.008

RSMo 1978; *State v. Shaw, supra,* [11–13]. Where more than one aggravating circumstance is found, on review we "need only determine whether as a matter of law and fact, one of the aggravating circumstances is applicable." *State v. Johns,* 679 S.W.2d 253 (Mo. banc 1984) [32]. "[T]he failure of one circumstance does not taint the proceeding so as to invalidate the other aggravating circumstance found and the sentence of death thereon." *State v. LaRette,* 648 S.W.2d 96 (Mo. banc 1983) [4, 5].

■ The murder for money circumstance has been held applicable to a murder committed during the course of a robbery. *State v. McDonald,* 661 S.W.2d 497 (Mo. banc 1983) [11, 12]; *State v. Lashley,* 667 S.W.2d 712 (Mo. banc 1984) [9]; *State v. Johns, supra,* [33, 34]. The statutory language establishing that aggravating circumstance does not limit its application to a killing of the person from whom the money is sought. Sec. 565.012(4) RSMo 1978. The evidence clearly establishes that the killing of Felts occurred during and as a part of a robbery. It is an even clearer case than *McDonald* for here the killing was utilized to obtain the money initially. This aggravating circumstance was properly submitted to and found by the jury. It is unnecessary therefore for us to review the second aggravating circumstance found by the jury.

■ Defendant contends that he was convicted by a death-qualified jury and thereby denied a fair and impartial jury. He relies upon *Grigsby v. Mabry,* 758 F.2d 226 (8th Cir.1985) to support this assignment of error. We reject the contention for several reasons. Initially, we have previously rejected the same contention. *State v. Johns, supra,* [24, 25]. Secondly, while we are bound by the decisions of the United States Supreme Court, we need not follow lower federal courts. *Rodgers v. Danforth,* 486 S.W.2d 258 (Mo. banc 1972) [3, 4]. We not only find *Grigsby v. Mabry, supra,* unpersuasive, we also find it contrary to virtually all other decisions on the same issue and to *Wainwright v. Witt,* ——

U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) handed down one week prior to *Grigsby.* Thirdly, in the case before us three veniremen were excused for cause not because they could not impose the death penalty but because they stated they could not return a verdict of guilty in a case where the punishment included the death penalty. Even under the *Grigsby* case these three veniremen were ineligible to serve as jurors on any aspect of the case. *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) n. 21; *Wainwright v. Witt, supra.*

■ Pursuant to Sec. 565.014(3) RSMo. 1978 (now 565.035 RSMo.Cum.Supp.1984), we are required to determine "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." In such a review we look to the facts of the homicide here as compared to similar homicides. We determine these facts from the entire record and transcript and from the trial judge's report. *State v. Lashley, supra,* [8].

We find this case similar to *State v. Newlon,* 627 S.W.2d 606 (Mo. banc 1982); *State v. McDonald, supra; State v. Lashley, supra,* and *State v. Johns, supra,* in all of which the capital murder was committed during the course of a robbery. Here, as in those cases, the killing occurred without provocation or resistance by the victim. In this case the victim was not even the person being robbed but a bystander who was executed to establish Defendant's control of the scene. The killing was without warning, was senseless and was a killing for the sake of killing. Consideration of the Defendant shows a man who commenced a night of life-threatening criminal activity which included four robberies, three attempted kidnappings, two attempted sexual assaults, and assorted additional felonies. Defendant prepared himself for this crime spree by practicing his marksmanship and acquiring a particularly life-threatening type of ammunition. It is apparent that he embarked upon his activities with a full intention to kill. By happenstance only one person was killed, but Defendant wounded two others by shooting them in places which could have caused death and attempted to shoot two other people. Only by good fortune are we dealing with one tragic murder and not five. Subsequent to killing Felts Defendant showed no remorse and in essence bragged on three occasions during that night about that killing. The report of the probation office prepared after trial and before sentencing and the report of mental examination (both attached to the report of the trial court) indicate that Defendant has a most cavalier attitude toward human life, has engaged in frequent assaultive and violent behavior, has no reluctance to kill for the most insignificant of reasons, and would kill again if given the chance. We find that the penalty imposed was not influenced by passion, prejudice or any other arbitrary factor, was supported by at least one aggravating circumstance, and was neither excessive nor disproportionate when compared to similar cases considering both the crime and the Defendant.

Judgment of conviction and sentence of death affirmed.

RENDLEN, C.J., and HIGGINS, BILLINGS, BLACKMAR and WELLIVER, JJ., concur.

DONNELLY, J., concurs in result.

GUNN, J., not sitting.