STATE of Missouri, Respondent,

v.

Kelvin Shelby MALONE, Appellant.

No. 65974.

Supreme Court of Missouri,
En Banc.

Aug. 7, 1985.

Rehearing Denied Sept. 10, 1985.

Robert J. Maurer, Office of the Public Defender, Clayton, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Chief Judge.

Kelvin Shelby Malone was convicted by a jury of capital murder, section 565.001, RSMo 1978, and sentenced to death, sections 565.008 and 565.012, RSMo 1978. Judgment was rendered accordingly. He contends the trial court erred in overruling a motion to dismiss based on the Uniform Mandatory Disposition of Detainers Law, section 217.450, RSMo (Cum.Supp.1984); permitting death qualification of the jury panel; admitting into evidence a bullet without establishing chain of custody; informing the jury of sentences received for prior offenses; and, submitting certain aggravating circumstances unsupported by the evidence. In addition to the review for error, the Court will conduct the sentence review required by section 565.014, RSMo 1978. Affirmed.

The evidence supports defendant's conviction for the murder of William Parr, a 62-year-old cab driver. Parr's body was discovered in Entrance Park, in the City of Berkeley, in the early morning hours of March 18, 1981. He was lying face down with his legs crossed, on top of a road atlas, magazines and trip tickets. There was blood coming from his nose and right ear. Arrangements were made to transport Parr to Christian Northeast Hospital, where he was pronounced dead.

Defendant arrived in St. Louis from Los Angeles by bus at the Greyhound Bus Station in downtown St. Louis on March 18, 1981. He had with him a suitcase, .25 caliber Raven automatic pistol, and an A.G. Galesi .25 caliber pistol. During a previous trial in California, defendant stated he hitchhiked from the bus station to Michael Crenshaw's house in Berkeley because he did not have cab fare. He later gave the Raven to Crenshaw and kept the Galesi.

Richard Elder was a Yellow Cab driver who worked with William Parr. Elder testified that around 11:45 p.m. on March 17, 1981, Parr was the cab driver in line to get the first order out from the Greyhound Bus Terminal. At approximately 1:00 a.m. on March 18, an order came for Parr to pick up a package at First National Bank at 510 Locust and take it to League Data at 1150 Hanley Industrial Drive. The bank facility was about two-and-one-half blocks from the bus station. This sort of delivery was top priority, and drivers were instructed by the company to complete them promptly. Parr picked up the delivery from First National Bank, but never reached his destination.

About four minutes after Parr left for his delivery, Elder passed by the First National Bank building on his way to pick up an order. He observed Parr's cab parked out front with the dome light on. At about 6th and Locust, Elder observed an individual with a suitcase attempting to hail a cab, whom he later identified as defendant. On his way home, Elder heard the dispatcher calling Parr's cab number several times without answer.

Daniel Ward, a computer room supervisor at First National, left the bank at 1:00 a.m. and saw a Yellow Cab parked out front. He testified that a black male with a suitcase was sitting in the back seat of the cab.

Police later discovered an abandoned Yellow Cab at 6105 Avila in the City of Berkeley. A resident of the neighborhood reported seeing a Yellow Cab drive down Fay Avenue and turn on Avila about 1:20 a.m., March 18. Emanuel Bego lived with the Crenshaw family at 8271 Fay. About 1:30 a.m., there was a knock at the door and Michael Crenshaw answered it. Bego did not see the visitor, but he heard Michael say "Kelvin." Defendant and Crenshaw left on March 18 to return to California in Crenshaw's vehicle. After they had gone, Bego found a Greyhound bus ticket in the basement, later identified as one from Los Angeles to St. Louis, date March 15. A night operations manager for Greyhound Bus testified that a timetable used in the commercial bus industry listed a bus as due to arrive in St. Louis from Los Angeles at 12:40 a.m. on March 18, 1981.

On March 24, 1981, officers of the San Jose, California, police found defendant and Michael Crenshaw asleep in a Mercury Capri. The two refused to produce identification when asked, and a high speed chase ensued. The officers eventually apprehended the pair and recovered a loaded .25 caliber Raven automatic pistol and a loaded A.G. Galesi .25 caliber pistol. The officers also found a small suitcase in the car.

A California ballistics examiner fired three test shots from the Galesi and mailed the projectiles to Al Hunt of the Berkeley Police Department. Officer Richard Staples was present at the hospital when the body of Parr arrived and observed the autopsy performed by Dr. Joseph Sapala. Officer Staples received a .25 caliber bullet that was taken from the victim's brain, and placed the bullet in a container. William Crosswhite, firearms and toolmark examiner for the St. Louis County Police Department, compared this bullet with the test bullets received from Hunt; the results were inconclusive. John H. Dillon, a Special Agent for the FBI and a ballistics examiner, compared the same bullets with the aid of a comparison microscope. He concluded that the test samples and evidence sample had been fired from the same weapon.

Defendant presented no evidence. In the sentencing phase, the state introduced evidence that defendant had been previously convicted of second degree robbery, for which he received seven years imprisonment; first degree murder and robbery, for which he received life imprisonment without parole and seven years, consecutive; and first degree murder, robbery and kidnapping, for which he was sentenced to death. The jury was instructed upon and certified the following aggravating circumstances: (1) the offense was committed by a person with a substantial history of serious assaultive criminal convictions; (2) the offender committed the offense of capital murder for himself or another for the purpose of receiving money or any other thing of monetary value; (3) the offense was outrageously or wantonly vile, horrible or inhuman in that it involved torture or depravity of mind; and, (4) the murder was committed to prevent a witness from testifying.

■ On March 26, 1984, the day of trial, defendant moved to dismiss the cause, contending the trial court lacked jurisdiction because the State failed to bring him to trial within 180 days as required by the Uniform Mandatory Disposition of Detainers Law, section 217.450 et seq., RSMo (Cum.Supp.1984). In denying the motion, Judge Voorhees referred to an earlier ruling by Judge Drumm extending the period of limitation to March 26. No error appears in the decision to honor a ruling from another division of the circuit court, the only question being whether the original ruling properly extended the time for trial.

The 180-day limitation is not absolute. Trial is to commence within 180 days of receipt of notice by the court and the prosecuting attorney or "within such additional necessary or reasonable time as the court may grant, for good cause shown in open court, the inmate or his counsel being present...." § 217.460, RSMo (Cum. Supp.1984). *See* § 217.490, art. III, § 1, RSMo (Cum.Supp.1984). The prosecuting attorney and the circuit court received notice September 26, 1983. Within the period of limitation, the State requested a continuance under the statute. This request was before the court when it held a hearing on March 23, 1984. Defense counsel was present. Judge Drumm stated that the next day, a Saturday, was the 180th day; that it was contrary to the established procedures and policies of the court to begin trial on a Saturday; that no jurors were available on a Saturday; that the law prohibited holding court on Sunday; and, that the first day of trial in this case would normally fall on Monday, March 26, 1984. The court concluded that there was good cause shown for extending the 180-day period by two days to March 26. Appellant now complains of a denial of a hearing on the merits of this claim, but made no record during the hearing held to support

his contention that the action taken violated the statute. This Court cannot say the extension granted was unreasonable or unnecessary.

■ Appellant, citing *Grigsby v. Mabry,* 758 F.2d 226 (8th Cir. en banc 1985), *petition for cert. filed sub nom. McCree v. Lockhart,* 460 U.S. 1088, 103 S.Ct. 1782, 76 L.Ed.2d 352, challenges death qualification of his jury panel, held unconstitutional in *Grigsby,* and urges the Court to reconsider its past decisions upholding the practice in view of the holding in *Grigsby.*

In *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the United States Supreme Court held that the state could not remove for cause any prospective juror with qualms about the death penalty. The Court did not decide whether the State could exclude from service in a capital case jurors who state they could never vote to impose the death penalty. In *Lockett v. Ohio,* the Court upheld the exclusion of jurors under *Witherspoon* guidelines, noting that the persons excluded clearly indicated an inability to "take the oath." 438 U.S. 586, 595–596, 98 S.Ct. 2954, 2959–2960, 57 L.Ed.2d 973 (1978). The Court found no support in its prior cases for the view "that the right to a representative jury includes the right to be tried by jurors who have explicitly indicated an inability to follow the law and instructions of the trial judge." *Id.* at 596–597, 98 S.Ct. at 2960. The Court in *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), expressly recognized the state's valid interest in obtaining jurors who are able to follow the instructions of the court and obey their oaths. Jurors unable to accept the death penalty as a punishment authorized by law are not so qualified. The Court found no violation of *Witherspoon* in the exclusion of jurors who cannot be impartial in deciding punishment but struck down the challenged statute because it authorized the exclusion of jurors on a broader basis.

In numerous capital cases arising since *Witherspoon* and the later decisions, this Court has interpreted and applied the principles expressed therein and has consistently rejected challenges to death qualification of the jury panel. *State v. Bannister,* 680 S.W.2d 141 (Mo. banc 1984), *cert. denied,* — U.S. —, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985); *State v. Johns,* 679 S.W.2d 253 (Mo. banc 1984), *cert. denied,* — U.S. —, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985); *State v. Byrd,* 676 S.W.2d 494 (Mo. banc 1984), *cert. denied,* — U.S. —, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985); *State v. Preston,* 673 S.W.2d 1 (Mo. banc 1984), *cert. denied,* — U.S. —, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984); *State v. Guinan,* 665 S.W.2d 325 (Mo. banc 1984), *cert. denied,* — U.S. —, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. Battle,* 661 S.W.2d 487 (Mo. banc 1983), *cert. denied,* — U.S. —, 104 S.Ct. 2375, 80 L.Ed.2d 847 (1984); *State v. Stokes,* 638 S.W.2d 715 (Mo. banc 1982), *cert. denied,* 460 U.S. 1017, 103 S.Ct. 1263, 75 L.Ed.2d 488 (1983); *State v. Mercer,* 618 S.W.2d 1 (Mo. banc 1981), *cert. denied,* 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981). Citing *Adams,* the Court in *Mercer* recognized "the state has a legitimate interest in administering its death penalty statute which permits it to bar from jury service those whose belief about capital punishment would lead them to ignore the law." 618 S.W.2d at 8. A juror who cannot consider imposing the death penalty regardless of the facts is one "whose belief about capital punishment would lead [him] to ignore the law." *Id.* In *Preston,* the Court explained, "[T]he removal of the jurors is not because they are members of a class. Rather, they are disqualified for the traditional reason that they cannot agree to try the issues presented on the evidence and law." 673 S.W.2d at 9.

The most recent pronouncement of the Supreme Court in this area supports the approach adopted in the foregoing cases. In *Wainwright v. Witt,* — U.S. —, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the Supreme Court observed that in capital cases, as in any others, the quest is for jurors who will "conscientiously apply the law and find the facts." *Id.,* 105 S.Ct. at 852. The

Court reaffirmed the standard for exclusion of jurors articulated in *Adams:* "whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Id.* This Court is neither bound by *Grigsby* nor persuaded by it to disregard *Wainwright* and depart from the line of Missouri cases holding that the state may constitutionally exclude jurors who cannot consider death as a possible punishment. *State v. Kenley*, 693 S.W.2d 79 (Mo. banc 1985). *See Hanch v. K.F.C. National Management Corporation*, 615 S.W.2d 28 (Mo. banc 1981). *See also State v. Nave*, 694 S.W.2d 729 (Mo. banc 1985).

■ Appellant contends the court erred in admitting into evidence a .25 caliber bullet removed from the victim's brain. He asserts the State failed to establish a proper chain of custody. The State maintains chain of custody was irrelevant because Officer Staples positively identified the bullet as that removed in his presence by Dr. Sapala during the autopsy.

Where a witness positively identifies the item in question, proof of chain of custody is unnecessary. *State v. Strong*, 484 S.W.2d 657 (Mo.1972). Officer Staples identified the bullet as that taken from Parr's brain, and testified that the bullet was in substantially the same condition now as then. Appellant contends identification was impossible because the officer did not mark the bullet. Any such weakness in identification was properly the subject of cross-examination, and was for the jury to consider in assessing the weight of the evidence. *See State v. Chambers*, 550 S.W.2d 846 (Mo.App.1977). There was evidence to show that the bullet was the one removed from the victim and in the same condition thus to render it admissible. *See U.S. v. Leach*, 429 F.2d 956 (8th Cir.1970), *cert. denied*, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971); *State v. Branscomb*, 638 S.W.2d 306 (Mo.App.1982). The trial court exercises wide discretion in this area, and did not abuse its discretion in this instance. *State v. Murray*, 630 S.W.2d 577

(Mo. banc 1982); *State v. Sherrill*, 657 S.W.2d 731 (Mo.App.1983).

■ Appellant charges error in informing the jury during the sentencing phase of trial of the sentences received by the appellant for prior offenses. Under opinions of the United States Supreme Court as well as this Court, the sentencer is to receive as much information as possible in the interest of individualized sentencing. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *State v. Gilmore*, 661 S.W.2d 519 (Mo. banc 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984). The trial court has discretion during this stage of trial to admit any evidence it deems helpful to the jury in fixing punishment. *State v. Bannister*, 680 S.W.2d 141 (Mo. banc 1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1879, 85 S.Ct. 170 (1985). Evidence of prior offenses, including details that reflect their seriousness, is relevant and not inadmissible because it arguably prejudices the defendant. *See Gilmore*, 661 S.W.2d at 523–524; *Smith v. State*, 683 S.W.2d 393 (Tex.Cr.App.1984). *But cf. West v. State*, 463 So.2d 1048 (Miss. 1985).

■ Appellant's final points may be taken together. He argues the evidence was insufficient to support the submission of the aggravating circumstances of whether the crime was outrageously or wantonly vile, horrible or inhuman in that it involved torture or depravity of mind and whether the murder was committed to prevent the victim from testifying in any judicial proceeding. Even if appellant is correct, the existence of a clearly applicable aggravating circumstance supports the sentence imposed.

Before the jury can consider imposing the death sentence, it must find at least one statutory aggravating circumstance. *State v. Kenley*, 693 S.W.2d 79 (Mo. banc 1985). Upon review of the sentence, the Court ascertains whether one of the aggravating circumstances applies. *State v.*

*Johns*, 679 S.W.2d 253 (Mo. banc 1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). Where, as here, the jury finds two or more aggravating circumstances, "the failure of one circumstance does not taint the proceedings so as to invalidate the other aggravating circumstance[s] found and the sentence of death thereon." *State v. LaRette*, 648 S.W.2d 96, 102 (Mo. banc 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983).

■ The statutory aggravating circumstance of whether the offender had a substantial history of serious assaultive criminal convictions was also submitted and found. § 565.012.2(1), RSMo 1978. The evidence clearly establishes the applicability of this circumstance; it was properly submitted to and found by the jury and is sufficient to sustain the sentence of death imposed. *See Kenley*, at 82.

Mandatory review of the sentence discloses no evidence that it was the result of passion, prejudice or any other arbitrary factor. § 565.014.3, RSMo 1978. The sentence of death imposed is not excessive or disproportionate to the penalty imposed in similar cases considering the crime and the defendant. § 565.014.3(3), RSMo 1978. The following representative cases support affirmance of the death penalty in this case. *State v. McDonald*, 661 S.W.2d 497 (Mo. banc 1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985); *State v. Stokes*, 638 S.W.2d 715 (Mo. banc 1982), *cert. denied*, 460 U.S. 1017, 103 S.Ct. 1263, 75 L.Ed.2d 488 (1983); *State v. Newlon*, 627 S.W.2d 606 (Mo. banc 1982), *cert. denied*, 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982).

The judgment is affirmed.

BILLINGS, WELLIVER, RENDLEN, JJ. and MAUS, Special Judge, concur.

BLACKMAR, J., concurs in separate opinion filed.

DONNELLY, J., dissents in separate opinion filed.

ROBERTSON, J., not participating because not a member of the Court when cause was submitted.

BLACKMAR, Judge, concurring.

I.

I am not satisfied with the treatment of the issue of chain of custody in the principal opinion. Even if Officer Staples in his testimony claimed that he was able to identify the bullet fragment and to distinguish it from other bullet fragments, this testimony did not satisfy the trial judge. The judge did not admit the fragment into evidence until it was established that it had arrived in California with an unbroken seal. The judge found basis for concluding that the seal was the one placed on the item by Officer Staples, and that the identification was not compromised simply because others had handled the sealed package in the meantime. I find no error in his ultimate conclusion.

I heartily endorse Judge Voorhees' comment that "it would be much cleaner identification if the missing fellow were here." Police departments and prosecutors should be very careful to establish a complete chain of custody of items and specimens which cannot be readily identified by eyewitnesses so as to be distinguished from similar items. A jury might not accept proffered evidence if the chain of custody is defective.

II.

Historical research I did in a capital case many years ago demonstrated that the practice of interrogating the jurors about the death penalty and excusing those who said they were unwilling to vote for a sentence of death arose at a time when most felonies were punishable by death. A juror who could not return a death sentence, then, might vote for acquittal even though persuaded beyond reasonable doubt that the defendant was guilty. *Compare State v. Nave*, 694 S.W.2d 729 (Mo. banc 1985) (No. 66379, decided August 7, 1985) and *State v. Kenley*, 693 S.W.2d 79 (Mo. banc 1985).

If the issue were an open one, I would hold that a juror could not be excused for cause simply because he or she expressed unwillingness to return a death verdict. I would allow questioning about attitudes toward the death penalty but would require the prosecution to use its peremptory challenges to exclude those who were opposed to the death sentence.

I do not believe that a juror in a Missouri capital murder case has a duty to consider a death sentence. The law gives each juror unbridled discretion to vote for or against a death sentence.

But this Court has spoken, in the cases cited in the principal opinion and in Judge Greene's opinion in State v. Nave, *supra.* We have rejected the rationale of *Grigsby v. Mabry,* 758 F.2d 226 (8th Cir.1985). I defer to our prior holdings, unless and until the Supreme Court of the United States decrees otherwise.

I concur in the affirmance of the conviction and the sentences.

DONNELLY, Judge, dissenting.

In *State v. Brizendine,* 445 S.W.2d 827 (Mo. banc 1969), the majority of this Court noted 28 U.S.C. 2254 (the Federal Habeas Corpus Act) and advised the people of Missouri that its effect is to make this Court subservient to all courts of the United States in cases involving violations of the criminal laws of Missouri.

Since *Brizendine,* and despite persistent urging after publication of Alexander M. Bickel's *The Morality of Consent* in 1975, the majority of this Court has refused to repudiate the arrogations of *Cooper v. Aaron,* 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19 (1958).

In this circumstance of self-imposed impotence, this Court, *in criminal cases where violations of the United States Constitution are alleged,* should withdraw from consideration of such cases until review by federal courts of such issues has been exhausted.

In any event, the posturing in this case reference *Grigsby* serves no useful purpose.

I respectfully dissent.