**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Donald Eugene PETARY,
Defendant–Appellant.**

No. 71189.

Supreme Court of Missouri,
En Banc.

Dec. 12, 1989.
Rehearing Denied Jan. 10, 1990.

Craig A. Johnston, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HIGGINS, Judge.

Donald Eugene Petary was convicted by a jury of first degree murder, section 565.-020.1, RSMo 1986; punishment was fixed at death. Judgment was entered accordingly. Affirmed.

Appellant charges the trial court erred: in overruling his motions for acquittal and for a new trial; in allowing evidence of unadjudicated crimes during the penalty phase; and in overruling his motion for the appointment of a second psychiatrist. He contends further that prosecutorial discre-

tion to waive a request for the death penalty renders its imposition arbitrary and capricious.

Appellant also charges the trial court erred, as matters of plain error: in failing to declare a mistrial following the State's closing argument; in excluding expert testimony as to the lack of deterrent effect of the death penalty; in giving instructions that failed to cover the burden of proof and that the jury must find unanimously the existence of each aggravating circumstance before considering it in returning its verdict; in its Instruction No. 19 on mitigating circumstances; in submitting Instruction No. 16 on aggravating circumstances; and in failing to submit a second degree felony murder instruction. He also argues, as matters of plain error: because a bailiff had excused a venireperson from the panel, the jury panel was not in compliance with the statute; one juror should have been stricken for cause because of her answers during voir dire; section 565.-032, RSMo 1986, does not afford capital defendants the same procedural protection accorded to non-capital defendants; and statements of his codefendant to FBI agents should not have been admitted.

## I. The Case

The evidence before the jury showed that in April 1987 Dan and Stella Allen lived in Ottumwa, Iowa, with their 17–year–old pregnant daughter, Christine, and their 12–year–old daughter, Kathy; both were special education students. While Mr. Allen was in the hospital following a heart attack, Donald Eugene Petary and his nephew, Andrew Six, went to the Allen home to look at a pickup truck the Allens were trying to sell to raise money for Mr. Allen to go to Texas for open heart surgery.

A few days later, after purchasing a roll of duct tape and two packages of plastic gloves, they returned in Petary's station wagon to the Allen home. Although it was late at night, Mrs. Allen agreed to go with them to test drive the truck. Mr. Allen, by now home from the hospital, remained at home. While in the truck, Six overpowered Mrs. Allen and Petary taped her hands

behind her back; Petary then drove back to the trailer where the Allens lived. Six stated he wanted to rape Christine. Upon their arrival, Mr. Allen came out of the trailer; Six held a butcher knife to Mrs. Allen's throat, and Petary, holding a butcher knife, forced Mr. Allen into the trailer, where Six taped his hands. Six then ordered the Allens into a bedroom, taped their mouths, and forced Mr. Allen to his knees.

Petary, holding a knife, went into Christine's bedroom, began kissing her, and threatened to kill her if she tried to use the telephone. He then left; Six entered and raped her while holding a butcher knife. Petary and Six then assembled all the Allens in one room and made Kathy and Christine don bib overalls. Petary took the girls to the station wagon, still holding the knife and threatening to kill them if they were not quiet. Six took the parents' wallets and then brought the parents outside; Mr. Allen ran to a neighbor's house. Six cut Mrs. Allen's throat, exposing her carotid artery. She later had to be hospitalized for nine days. Christine escaped from the station wagon; Six got in, and he and Petary drove off with Kathy in the station wagon.

Petary drove to the home he shared with his common-law wife and switched vehicles; a few minutes later sheriff's deputies found Petary's station wagon with blood still warm on the hood and fender, a knife on the driver's seat, a half pint bottle of liquor, a piece of bloody duct tape, and receipts and wrappers for the duct tape and gloves. Petary and Six then went to Petary's friend's home where they collected approximately $60 as a loan repayment, then drove south on U.S. Highway 63 toward Missouri, discarding the wallets along the way. The next evening they were arrested by Texas state troopers in east Texas.

Petary waived his Miranda rights and stated he did not remember seeing Kathy in the car when they left; he passed out and awoke near daylight somewhere north of Kansas City on I–35, heard car tires spinning on gravel, and saw a Highway 63 road sign and a concrete culvert under the

road. With this information, law enforcement officers found Kathy's body in a ditch near a culvert on a gravel road off U.S. 63 in Schuyler County; there was blood on the side of the culvert and a pool of blood near the body. She was wearing the bib overalls; her underwear had been stuffed between her legs. Her throat had been cut; she had bled to death because her carotid artery was severed. She also had scrapes and two smaller cuts around the main stab wound.

Fibers taken from the car matched fibers found in Kathy's clothes. A fiber from the car also matched a fiber in her pubic hair and a hair found in her underwear was consistent with Six's.

The foregoing statement demonstrates a submissible case in support of the jury's verdict on guilt.

In the punishment phase of the trial, the State presented, in addition to the foregoing, evidence of Petary's prior convictions and institutionalization, attempted escape from the Putnam County jail, abuse of another inmate, and sexual abuse of his daughters and stepdaughter when they were children. Petary presented witnesses concerning the high degree of security in facilities used to house inmates serving sentences without possibility of probation or parole, and testimony from friends and his common-law wife in mitigation of his sentence. The jury found both the statutory aggravating circumstances of murder during a kidnapping and of a witness and the above nonstatutory aggravating circumstances to apply as submitted and assessed defendant's punishment at death.

## II. Preserved Errors

### A.

■ Appellant argues that the trial court should have acquitted him or awarded a new trial because the State's evidence of his intent and deliberation was circumstantial and failed to prove that he knowingly caused Kathy's death after deliberation. The State is not required to prove that defendant's accomplice intended to cause the victim's death. In order to convict Petary as an accomplice to first degree murder, the prosecution must prove that he aided in the crime with the purpose of promoting the commission of that crime. *State v. Roberts,* 709 S.W.2d 857, 861 (Mo. banc 1986), *cert. denied,* 479 U.S. 946, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986); *State v. White,* 622 S.W.2d 939, 943 (Mo. banc 1981), *cert. denied,* 456 U.S. 963, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982).

■ Appellant's argument is answered by evidence that Petary planned the murder with Six. He brought Six to the Allen home for the ostensible purpose of buying the truck; he bought the duct tape and plastic gloves; he told Mrs. Allen the pretext of wanting to test drive the truck; and he held members of the family at knife point and threatened to kill them. *State v. Rodden,* 728 S.W.2d 212, 213 (Mo. banc 1987).

### B.

■ Appellant argues that the trial court abused its discretion in admitting evidence of prior sexual abuse of his daughter and stepdaughter, attempted escape from jail and an assault committed on another inmate while awaiting trial, because these crimes were unadjudicated. He asserts that the imposition of the death penalty based on a finding of unadjudicated crimes does not meet the constitutional requirement of reliability, and also that the time of some of the alleged crimes was so remote as to preclude defense.

In *State v. Jones,* 749 S.W.2d 356, 364 (Mo. banc 1988), this Court held that evidence of the defendant's prior unadjudicated criminal conduct may be heard by the jury in the punishment phase of a trial: "The jury at the punishment phase is entitled to full information about the defendant and his previous conduct." *See also Gregg v. Georgia,* 428 U.S. 153, 197, 96 S.Ct. 2909, 2936, 49 L.Ed.2d 859 (1976); *State v. Malone,* 694 S.W.2d 723, 727 (Mo. banc 1985); *State v. Gilmore,* 661 S.W.2d 519, 524 (Mo. banc 1983).

■ The evidence of Petary's sexual abuse of his children was relevant to show his character under the statute. Any ques-

tion of remoteness was for the jury. *State v. Muthofer*, 731 S.W.2d 504, 509 (Mo.App. 1987). The jury was aware that these crimes were unadjudicated.

### C.

■ Appellant argues the trial court erred in denying his motion for a second psychiatric examination at the state's expense to seek potential mitigating evidence. Under section 552.020.6 and section 552.-030.3, RSMo 1986, defendant was not entitled to a second psychiatric examination at state expense. *State v. Williams*, 603 S.W.2d 562, 565 (Mo.1980); *State v. Grant*, 560 S.W.2d 384, 386 (Mo.App.1977). Appellant cites *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), a case that is inapposite because it dealt with an initial psychiatric examination. Petary had already had a psychiatric examination at state expense, testing his competency to stand trial as well as his competency at the time of the offense.

### D.

■ Appellant argues because the prosecutor in Missouri can choose not to seek the death penalty under sections 565.004.4, 565.005.1, 565.006.3, and 565.030, RSMo 1986, without statutory guidelines or time limitations in which to waive the death penalty, the imposition of the death penalty is rendered arbitrary, capricious, and according to the whim of the prosecutor. He contends this violates the eighth and fourteenth amendments and the principle of separation of powers by investing the prosecutor with the exclusively judicial power of sentencing.

It is precisely the element of discretion in charging and sentencing that serves as a safeguard against arbitrariness and capriciousness. If the prosecutor were required to seek the death penalty without considering the circumstances of a case, the ultimate result, were all such elements of discretion to be removed from the sentencing phase also, would be a mandatory death sentence in violation of the United States Constitution under *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). *Gregg*, 428 U.S. at 199 n. 50, 96 S.Ct. at 2937 n. 50; *see also State v. Walls*, 744 S.W.2d 791, 800 (Mo. banc 1988).

■ Appellant's contention that this prosecutorial discretion violates separation of powers is not credible. A prosecutor has broad discretion in deciding whom to prosecute and what the charges will be; this decision is not subject to judicial review. *State v. Massey*, 763 S.W.2d 181, 183 (Mo.App.1988).

### III. Plain Errors

■ Appellant makes numerous allegations of error unsupported by objections at trial. Their review is limited to the standard of plain error. *State v. Schneider*, 736 S.W.2d 392, 398 (Mo. banc 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988). *See also Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983); and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Whether plain error exists depends on whether this Court finds that a "manifest injustice" or a "miscarriage of justice" has occurred. Rule 30.20; *State v. Preston*, 673 S.W.2d 1, 9 (Mo. banc 1984), *cert. denied*, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984).

### A.

Appellant claims the trial court should have declared a mistrial, *sua sponte*, because of remarks the prosecutor made in the closing arguments of both the guilt and punishment phases of the trial. He emphasizes that closing arguments in the punishment phase of capital cases must receive a "greater degree of scrutiny" than in noncapital cases. *Ramos*, 463 U.S. at 998–999, 103 S.Ct. at 3451–3452.

He argues that the prosecutor made arguments not supported by the evidence in the guilt phase. The trial transcript refutes this assertion and demonstrates that all statements made by the prosecutor were properly inferable from the evidence.

*State v. Clemmons*, 753 S.W.2d 901, 908 (Mo. banc 1988), *cert. denied,* — U.S. —, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). There was no abuse of discretion, *State v. Hutchinson*, 458 S.W.2d 553, 556 (Mo. banc 1970), and no plain error.

 Appellant argues the State improperly denigrated the jury's power to bestow mercy during the punishment phase by equating mercy with weakness, inverting his plea for mercy into an aggravating rather than a mitigating factor, and also shifting the burden of proof to the defendant to show that he deserved to live. A jury may grant mercy by imposing life imprisonment rather than the death penalty under section 565.030.4, RSMo 1986. *Clemmons*, 753 S.W.2d at 910. Mercy must be grounded in the circumstances of the case. *Id.* The prosecutor's argument that this defendant did not deserve the jury's mercy did not shift the burden of proof.

 Appellant argues that the State's references to the victim's age, her sister's pregnancy, their mental retardation, and her family's financial problems amounted to an impermissible victim impact argument in both phases of the trial, thus denying him due process and subjecting him to other constitutional violations. Appellant cites *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and *South Carolina v. Gathers*, — U.S. —, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989); his reliance is misplaced. Both involved irrelevant victim impact evidence. The references to the victim's and family's status in this case were relevant circumstances of the crime because they substantiated the prosecution's theory of the crime, that the defendants had deliberately chosen a vulnerable family as their victims. *Jones*, 749 S.W.2d at 365.

Appellant complains that the prosecutor in rebuttal argument attacked defense counsel personally, saying that counsel told the jury a "story" and that the jury would have to be a "magician" to believe him. He cites *State v. Burnfin*, 771 S.W.2d 908 (Mo.App.1989) (the prosecutor told the jury that defense counsel had tried to hide the truth, had "trashed" a witness who could not read, and had coached its witness), and *State v. Hornbeck*, 702 S.W.2d 90 (Mo.App. 1985) (the prosecutor accused defense counsel of conspiring to commit a crime, without any supporting evidence). In contrast, the prosecutor in this case argued that the defense theory was not supported by the evidence.

 Appellant claims the State improperly argued his probable future dangerousness in the closing argument of the punishment phase. A prosecutor may argue the criminal propensities of a defendant during the punishment phase, *State v. Antwine*, 743 S.W.2d 51, 71 (Mo. banc 1987), and may argue for deterrence and strict law enforcement, *State v. Amrine*, 741 S.W.2d 665, 669 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988).

 Appellant claims the prosecutor improperly personalized his argument to the jury by saying "can you believe the terror ... can you imagine ... think of their helplessness, think of their torment." Although a prosecutor may not personalize an argument to the jury, *State v. Harris*, 714 S.W.2d 561, 563 (Mo.App.1986); *State v. Raspberry*, 452 S.W.2d 169, 172 (Mo. 1970); *State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524 (Mo. banc 1947), the remarks in this case are not of that import. Appellant charges that the prosecutor was implying knowledge of facts not in evidence. On the contrary, he implied no such knowledge.

 Appellant complains that when the prosecutor repeatedly stated that the evidence and Petary's actions were uncontroverted and uncontradicted, he was indirectly pointing to Petary's failure to testify, in violation of the fifth and fourteenth amendments. *State v. Shields*, 391 S.W.2d 909, 912 (Mo.1965), *cert. denied*, 382 U.S. 966, 86 S.Ct. 457, 15 L.Ed.2d 369 (1965); section 546.270, RSMo 1986; Rule 27.05. The record demonstrates that the prosecutor indicated within proper limits that the evidence in support of conviction was uncontradicted and uncontroverted; he did not

direct the jury's attention to the defendant's failure to testify.

■ Appellant also complains that the prosecution should not have been allowed to elicit and argue evidence of prior convictions, parole, and commission of further crimes after parole, asserting evidence of parole should be a mitigating factor, and it is unfair to present such a factor in a light that makes it appear to be aggravating. *Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983).

Section 565.032.1(3), RSMo 1986, provides:

> In all cases of murder in the first degree for which the death penalty is authorized, the judge in a jury-waived trial shall consider, or he shall include in his instructions to the jury for it to consider:
>
> * * * * * *
>
> (3) Any mitigating or aggravating circumstances otherwise authorized by law and supported by the evidence and requested by a party including any aspect of the defendant's character, the record of any prior criminal convictions, and pleas and findings of guilty and admissions of guilt of any crime or pleas of nolo contendere of the defendant[.]

The prosecutor's argument regarding Petary's parole status was proper because it responded to defendant's argument for mercy. *Walls*, 744 S.W.2d at 798.

### B.

■ Appellant also asks this Court to review alleged errors in refusing to allow penalty phase testimony regarding the lack of deterrent effect of the death penalty, and in failing to declare a mistrial, *sua sponte*, when the prosecutor argued its deterrent effect during closing argument. This Court held in *State v. Griffin*, 756 S.W.2d 475, 485–6 (Mo. banc 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989), that expert testimony in the punishment phase regarding the lack of deterrent effect of the death penalty is irrelevant because it does not assist the jury in assessing the submitted aggravating and mitigating circumstances or other issues properly before it. A conviction will be reversed for improper argument only if it is established that the argument had a decisive effect on the jury verdict or that the trial court abused its discretion. *State v. Wren*, 643 S.W.2d 800, 802 (Mo.1983); *State v. Williams*, 646 S.W.2d 107, 109 (Mo. banc 1983). The prosecutor's argument here was for society's need for strict law enforcement.

### C.

■■ The penalty phase jury instruction on nonstatutory aggravating circumstances omitted paragraphs provided by MAI–CR3d 313.41 for informing the jury that the burden rests upon the State to prove the nonstatutory aggravating circumstances beyond a reasonable doubt, and that before the jury may consider a nonstatutory aggravating circumstance, it must find unanimously and believe that it exists beyond a reasonable doubt. This omission, appellant claims, deprived him of due process under the fifth and fourteenth amendments. The failure of an instruction to follow the MAI–CR3d or any applicable Notes on Use constitutes error, the prejudicial effect of which is to be determined by the court. Rule 28.02(f); *White*, 622 S.W.2d at 943. Any deviation from the approved instructions is presumed prejudicial unless the contrary is clearly shown. *Id.*

■ The omission of the requirement that the jury find the nonstatutory aggravating factors beyond a reasonable doubt was remedied in this case by Instruction 18, which included the requirement. Because instructions are considered as a whole, the jury was instructed adequately on the burden of proof.

■ The omission of the requirement of unanimity in the jury's finding the existence of a nonstatutory aggravating factor was not corrected elsewhere in the instructions and the record does not show that the court instructed the jury on the requirement of unanimity. There was no manifest injustice or plain error, however, because

under section 565.030, RSMo 1986, the trier of fact is required and instructed to assess punishment at life imprisonment without probation or parole if it does not find the existence of one or more of the statutory aggravating circumstances and if it does not unanimously find beyond a reasonable doubt that the aggravating circumstances found warrant the death penalty. The record shows that the jury found the existence of three statutory aggravating circumstances and the instructions for the statutory aggravating circumstances were complete. The statute also provides for the possibility of the jury's bestowing mercy if it finds that the mitigating circumstances outweigh the aggravating circumstances, or if it simply decides under all the circumstances not to assess the death penalty. Because of these provisions, it does not appear that a manifest injustice has occurred, with due regard accorded the heightened scrutiny required by *Caldwell*, 472 U.S. 320, 105 S.Ct. 2633.

Appellant complains Instruction 19 was deficient in two respects: (1) a reasonable juror could interpret it to mean that mitigating circumstances must be found unanimously before they could be considered, in violation of *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); and (2) by stating the jurors "may consider" mitigating circumstances, it implied that the sentencer may refuse to consider such circumstances in violation of *Skipper v. South Carolina*, 476 U.S. 1, 4, 106 S.Ct. 1669, 1670, 90 L.Ed.2d 1 (1986). Although defendant, himself, submitted this instruction, this Court will review for the plain error charged. *State v. Moland*, 626 S.W.2d 368 (Mo.1982).

As submitted, the instruction read:

You may also consider any circumstances which you find from the evidence in mitigation of punishment.

If you unanimously find that one or more mitigating circumstances exist sufficient to outweigh the aggravating circumstances found by you to exist, then you must return a verdict fixing Defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole.

This instruction could be read to say that a reasonable juror could have concluded that no piece of mitigating evidence could be considered in defendant's favor unless it was found to be a mitigating circumstance by all twelve jurors, rather than the intended meaning that if the jurors find unanimously that any mitigating circumstances outweigh the aggravating circumstances, then they must assess punishment at life imprisonment rather than death. Instruction No. 20 follows and clarifies No. 19 and states that the jurors are not compelled to fix the penalty at death regardless of their finding on mitigating circumstances. This instruction removed any tinge of unconstitutionality and did not violate *Mills*. *See Roberts v. State*, 775 S.W.2d 92, 96 (Mo. banc 1989) (Blackmar, C.J., concurring).

Appellant's complaint of the use of "may consider" regarding mitigating circumstances is based on a faulty premise. He argues that "may consider" implies the contrary to the holding of *Skipper*, 476 U.S. at 4, 106 S.Ct. at 1670, that "the sentencer may not refuse to consider or be precluded from considering 'any relevant mitigating evidence,'" *quoting Eddings v. Oklahoma*, 455 U.S. 104, 114, 102 S.Ct. 869, 876, 71 L.Ed.2d 1 (1982). In *Eddings* and in *Skipper*, the trial court refused to admit certain mitigating evidence; there was no exclusion of mitigating evidence here. "May consider" signifies that the jury is given discretion as to what weight the mitigating evidence should receive. The jury in this case was instructed to consider all mitigating evidence.

Appellant complains of Instruction 16 asserting two aggravating circumstances were not supported by substantial evidence, two others were duplicative, and two alternative definitions of "kidnapping" were submitted in the disjunctive. The evidence showed that Petary and Six planned to remove the entire family. Kathy was the only one who could not escape. Kathy saw appellant and Six cut her mother's throat and leave her for dead. This was

**544**

substantial evidence supporting the aggravating circumstances that Kathy was killed because of her status as a potential witness to her own kidnapping and her mother's attempted homicide. There was no duplication between the aggravating circumstances because kidnapping was mentioned in two of them. One concentrated on the perpetration of the murder in the course of a kidnapping while the other concentrated on the victim's status as a potential witness. Similarly, there was no duplication between the two other aggravating circumstances submitted. They dealt with the victim's status as a witness to two distinct and separate crimes. Finally, there was no prejudice in the submission of four definitions of kidnapping in the disjunctive. The submitted definitions contained the methods of kidnapping in this case. Appellant was not prejudiced by the submission of the entire hypothetical definition. MAI–CR3d 333.00, Note on Use 3.

Appellant claims the trial court should have submitted, *sua sponte,* an instruction on second degree felony murder because there was enough evidence to acquit him of first degree murder and convict him of second degree murder. He argues his eighth and fourteenth amendment rights were thus violated under *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

 At trial the defendant presented no evidence to acquit himself of committing a deliberated murder and to justify a conviction of felony murder. Instead, he denied kidnapping the victim and participating in her murder. When a defendant denies the commission of the act charged and there is no evidence to mitigate the greater offense, the court is not required to instruct down. *State v. Olson,* 636 S.W.2d 318, 321 (Mo. banc 1982). There was no basis in the evidence of this case to acquit Petary of first degree murder and convict him of felony murder because he denied knowing Kathy was in the car. There was no prejudice because the jury was instructed on conventional second degree murder; it failed to find that verdict, thus indicating the jury did not find defendant did not

deliberate. The appropriate MAI–CR3d requires that the jury find the defendant not guilty of first degree murder and then conventional second degree murder before it may consider second degree felony murder. Because the jury failed to find second degree murder, appellant was not harmed by absence of a submission of second degree felony murder. It would have been superfluous.

 *Beck,* 447 U.S. 625, 100 S.Ct. 2382, dealt with the necessity of including a third option of finding the defendant guilty of a lesser included offense rather than leaving the jury with the dilemma of finding the defendant either guilty or not guilty. Because the jury in this case did receive a third option of finding appellant guilty of conventional second degree murder, there was no violation of his constitutional rights.

 Because the instruction would have been superfluous, there is also no ineffective assistance of counsel with respect to his claim.

**D.**

 Appellant argues that because section 565.032, RSMo 1986, permits a jury to consider evidence of unadjudicated offenses in first degree murder cases, but not in non-capital cases, capital defendants are thus singled out for less procedural protection.

This argument lacks merit because the capital murder sentencing procedure is applied evenly among all defendants convicted of that offense. *State v. Bolder,* 635 S.W.2d 673, 685–686 (Mo. banc 1982).

**E.**

 There was no plain error in the selection of the jury or in the admission of statements made by Petary's codefendant to FBI agents. Appellant expressly stated during voir dire that he had no objection to excuse of the venireman in question. There was no evidence that the venirewoman who indicated she would be bothered by looking at photographs of Kathy's body could not view the evidence fairly and free

545

from bias and prejudice. *State v. Leisure,* 749 S.W.2d 366, 372 (Mo. banc 1988). Because there was no prejudice, appellant's ineffective assistance of counsel claim in this connection is also denied. Appellant opened the door for admission of Six's statements in his cross-examination of the FBI agent. *State v. Jordan,* 646 S.W.2d 747, 750 (Mo. banc 1983).

### IV. Independent Review

■ This Court, under section 565.035.-3(1), (2) and (3), RSMo 1986, reviews whether defendant's sentence is excessive and disproportionate to the punishment imposed in similar cases, whether it was imposed under the influence of passion or prejudice, and whether the statutory aggravating circumstances that the jury found were warranted by the evidence.

This Court has compared five Missouri cases in which the death penalty was imposed on defendants who murdered their victims as a result of their status as potential witnesses: *State v. Blair,* 638 S.W.2d 739 (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983); *State v. Williams,* 652 S.W.2d 102 (Mo. banc 1983); *State v. Byrd,* 676 S.W.2d 494 (Mo. banc 1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985); *State v. Boliek,* 706 S.W.2d 847 (Mo. banc 1986), *cert. denied,* 479 U.S. 903, 107 S.Ct. 302, 93 L.Ed.2d 276 (1986); and *State v. Foster,* 700 S.W.2d 440, 445 (Mo. banc 1985), *cert. denied,* 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986). Those cases are similar; appellant's punishment is the same and is not excessive or disproportionate.

There is no evidence that the punishment was imposed under the influence of passion or prejudice.

The statutory aggravating circumstances which the jury found were: (1) Kathy was murdered during the commission of a kidnapping, and (2) Kathy was murdered as a result of her status as a potential witness to her own kidnapping and to the attempted homicide of her mother. As previously demonstrated, the evidence supported submissions and findings on both.

The judgment of conviction and sentence to death for murder in the first degree is affirmed.

BLACKMAR, C.J., ROBERTSON, RENDLEN, COVINGTON and BILLINGS, JJ., and TURNAGE, Special Judge, concur.

HOLSTEIN, J., not participating because not a member of the Court when case was submitted.