**STATE of Missouri, Respondent,**

v.

**James MERRICK, Appellant.**

**No. 47865.**

Missouri Court of Appeals,
Eastern District,
Division Three.

July 17, 1984.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Sept. 18, 1984.

Robert A. Hampe, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, for respondent.

REINHARD, Judge.

Defendant was convicted by a jury of robbery in the first degree under § 569.-020, RSMo. 1978, and armed criminal action under § 571.015, RSMo. 1978. He was sentenced to consecutive terms of ten years on the robbery count, and eight years on the criminal action count. He appeals. We affirm.

On November 21, 1982, a man wielding a sawed-off shotgun entered the Southside Delicatessen in St. Louis. The proprietor and his wife and their eight year old daughter were watching television in the back of the store. While the wife was on her way upstairs, the store's front door buzzer

rang, indicating someone had entered the store. When the proprietor went to the front, followed by his daughter, the robber pointed the gun at the proprietor's head and demanded money. As the proprietor gave the man money from his cash drawer, his frightened daughter ran to the back of the store and told the wife about the robbery. The wife then sent her daughter upstairs to hide, and went to the front of the store. After she observed the robber with the gun, the wife went upstairs and called the police. A man walking in the vicinity saw a man leave the store with a gun in his hand, and get in a Trans Am automobile.

Two policemen observed a Trans Am fitting the description of the robber's car at a filling station. When the car left, they followed and attempted to stop it. A pursuit ensued, and defendant was apprehended with another man when the Trans Am went out of defendant's control in Tower Grove Park.

The store proprietor was driven to the park, where he identified defendant. A sawed-off shotgun was found in the car, and cash was found on defendant. The proprietor, his wife, and the passerby all identified defendant at trial.

Defendant testified at trial that he was an innocent victim. According to his testimony, he had gone riding with a man he new by the name of Price. They were going to Pevely, Missouri, for target practice, and had obtained a shotgun from defendant's brother-in-law earlier that evening. Price had sawed the barrel off the shotgun with a hacksaw, without defendant's permission. Defendant drove Price's car as they bought beer, and then went to victim's store so that Price could buy cigarettes. Defendant waited in the car, and was unaware that Price took the gun with him when he entered the store. Price then came out of the store with the gun and the money, and said, "Let's get out of here." The two then went to Tower Grove Park, and then to a filling station. As they left the station, they were pursued by a police

car, and defendant attempted to evade them.

Defendant admitted that after the police had apprehended him and Price, he gave a statement to two policemen, Officers Kriska and Douglas. Defendant testified that he did not tell the officers that he had helped saw off the barrel of the shotgun. In rebuttal, Officer Kriska testified that although defendant denied participation in the robbery, he admitted participation in sawing off the barrel of the shotgun.

Procedurally, the trial arose as follows. A complaint was filed and a warrant for defendant's arrest was issued on November 22, 1982. A preliminary hearing and arraignment were held on January 14, 1983, and trial was set for January 31. Defendant filed an affidavit of indigency, a public defender was appointed, and defendant's requests for discovery and disclosure were filed. The case was continued at defendant's request on February 3, 1983, and again on March 3, 1983. On March 11, private attorney John McCaffery entered his appearance as substitute counsel for defendant. The case was again continued for defendant in March, in May and yet another time in June. In July, defense counsel McCaffery withdrew for health reasons, and the previously appointed public defender again entered his appearance. The case was continued for defendant in July, and again in August. During this time, defendant's family attempted to negotiate with another private attorney for representation. Trial was set for September 12.

On September 9, defense counsel endorsed its witnesses and announced ready for trial. However, on September 12, the day set for trial, defense counsel filed a verified motion to withdraw because private counsel was available to defendant. Defendant also made an oral request for a continuance so that the proposed new counsel could prepare for trial. The trial court refused to continue the case again, and the motion to withdraw was denied. However,

the court agreed to allow the private attorney to also represent the defendant. The defendant declined.

Defendant next moved for a continuance because the state had only that day produced a police report from the co-defendant's file containing potentially incriminating statements made by defendant to two policemen, to-wit, that he had helped saw off the barrel of the shotgun. Defense counsel maintained that the report should have been produced much earlier, after defendant's request for discovery had been made under Rule 25.03. The state acknowledged the report should have been disclosed earlier to defendant, but stated its failure to do so was an oversight. The state had not endorsed either policeman as a witness, and did not intend to use either in its case in chief. The trial court granted a continuance until the following day and instructed the state to produce the two policemen so that defense counsel could interview them. However, only one of the policemen, Officer Kriska, could be reached that day. Defense counsel interviewed him.

Both counsel appeared before the court on the following morning. The state again stated that it would not use either policeman as a witness in its case in chief. The court ordered that Officer Douglas could not be used as a witness. He was produced for defense counsel's interview at noon, after voir dire had begun. Over defense counsel's objection, the trial began. The state did not call either policeman during its case in chief, but did use Officer Kriska as a rebuttal witness. As stated previously, the defendant had testified that he had not participated with co-defendant in sawing the barrel off the shotgun; Officer Kriska testified that defendant had made a statement to him, which Kriska had put in

his police report, indicating that defendant *had* participated.

Defendant raises two points on appeal. Defendant contends the trial court erred (1) by refusing to grant a continuance so that defendant could retain private counsel, and the new counsel could have preparation time, and (2) by refusing to grant a longer continuance [1] to allow present defense counsel more time to "prepare, evaluate, decipher, and defend against" the police report that the state produced September 12.

■ The granting of continuances is within the sound discretion of the trial court, and the ruling of the court will only be reversed if there is a clear and certain abuse of discretion. *State v. Wright*, 650 S.W.2d 714, 715 (Mo.App.1983). Here, the record shows that defendant was granted a total of seven continuances over a period of nine months from arraignment to trial. Although defendant does have the right to hire private counsel of his own choosing, that right is limited to the extent that it impedes the orderly and efficient administration of justice. *State v. Jefferies*, 504 S.W.2d 6, 7 (Mo.1974). Defendant's desired private attorney had been contacted by defendant's family ninety days before trial; yet he was not retained and did not attempt to enter his appearance until the day of trial. Clearly, defendant had been afforded the opportunity to engage his own attorney with adequate time to prepare a defense. *See State v. Wright*, 650 S.W.2d at 716. In light of the number of continuances over a period of nine months, we find no abuse of discretion in the trial court's denial of defendant's oral request for a continuance.[2]

■ Defendant's second point of error also must fail. Rule 25.03 requires the

---

1. Although defendant states in his brief that the trial court refused to grant a continuance, the court, in fact, did continue the case for one day to allow defendant an opportunity to investigate the newly disclosed police report. We, therefore, consider his point of error to be based on the court's refusal to grant more time than it did.

2. Furthermore, defendant's failure to file a verified written motion for a continuance under Rule 24.09 is alone sufficient ground to affirm the trial court's action. *State v. Diamond*, 647 S.W.2d 806 (Mo.App.1982).

state, upon written request of defense counsel, to disclose any statements made by defendant. If the state fails to comply with the rule, the court may order disclosure of the statement, grant a continuance, exclude the evidence, or enter other orders as it deems just. Rule 25.16. "It is well-settled that whether a sanction is to be imposed or the nature of the sanction, if imposed, is a matter within the discretion of the trial court." *State v. Smith*, 650 S.W.2d 5, 7 (Mo.App.1983). The issue, then, is whether the trial court abused its discretion in its application of Rule 25.16. An abuse of discretion occurs only when the trial court's action under Rule 25.16 results in fundamental unfairness to the defendant. *State v. Smothers*, 605 S.W.2d 128, 131–32 (Mo. banc 1980). Fundamental unfairness is determined by whether discovery of the evidence would have affected the outcome of the trial. *State v. Stewart*, 636 S.W.2d 345 (Mo.App.1982).

Here, the state failed fully to comply with defendant's request for discovery by failing to disclose the police report. Thus, Rule 25.03 was violated. However, we find that the trial court's sanctions imposed under Rule 25.16 did not result in fundamental unfairness. The court granted a one-day continuance so that defense counsel could investigate the report. During that day, only Officer Kriska could be located. On the next day, after voir dire had been conducted but before trial began, Officer Douglas was produced and was interviewed by defense counsel. The court established on the record that only Officer Kriska's testimony would be used by the state, and only on rebuttal rather than in the state's case in chief. We conclude that these sanctions were sufficient to preserve fundamental fairness to defendant, and we find no abuse of discretion.

Judgment affirmed.

KAROHL, P.J., and CRANDALL, J., concur.