STATE of Missouri, Respondent,

v.

Samuel D. SMITH, Appellant.

No. 70946.

Supreme Court of Missouri,
En Banc.

Dec. 12, 1989.

Rehearing Denied Jan. 10, 1990.

Craig A. Johnston, Columbia, David D. Kite, Jefferson City, for appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Defendant was convicted of first degree murder for the stabbing death of fellow inmate Marlin May at the Missouri State Penitentiary on January 15, 1987. Because the jury fixed his punishment at death, defendant's appeal falls within the exclusive original appellate jurisdiction of this Court. Mo. Const. art. V, § 3. We affirm.

The events of that fateful day began with a knife attack by certain inmates upon another inmate, Demetrius Herndon. The incidents began on Five and Six Walks of housing unit 5, and concluded after a chase to corridor T–3, three stories below. Defendant yelled at the attackers in an attempt to intervene, but Marlin Mays, one of the antagonists, turned toward defendant and threatened him. Defendant and May then became engaged in a scuffle of their own, wherein defendant stabbed May numerous times in spite of efforts by the prison guards to intercede; the two finally separated when a guard sprayed mace on appellant and the victim was pulled through a gateway by corrections officers. The victim received nineteen stab wounds to the head, chest, back, and arm, and died almost instantly as a result of piercing injuries to the heart and lungs.

## I.

Defendant first contends there was insufficient evidence of deliberation to support his conviction of first degree murder, and in reviewing this contention "the evidence, together with all reasonable inferences to be drawn therefrom, is viewed in the light most favorable to the verdict and evidence and inferences contrary to the verdict are ignored." *State v. Clemmons,* 753 S.W.2d 901, 904 (Mo. banc 1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). Viewed in this light, the evidence abundantly vindicates the conviction. A defendant commits the crime of first degree murder "if he knowingly causes the death of another person after

deliberation upon the matter," § 565.020, RSMo 1986,[1] and " '[d]eliberation' means cool reflection for any length of time no matter how brief." § 565.002(3). The evidence supportive of the verdict indicates that the victim received nineteen stab wounds and defendant chased him down several flights of stairs and through some corridors while correctional officers attempted to stop him before he administered the lethal blow. Throughout this process, when prison guards attempted to intervene, defendant threatened them and continued to stab the victim. From this the jury could reasonably have inferred that defendant had an opportunity to reflect upon his actions for a length of time sufficient to meet the statutory criteria. The facts may be analogized to *State v. Clemmons*, 753 S.W.2d at 906, which, like the case at bar, involved a first degree murder conviction arising from a confrontation between fellow inmates. There "[t]he evidence that defendant had to take a few steps toward Henry Johnson before grabbing him and striking him in the chest with what was eventually determined to be a knife [gave] rise to the reasonable inference that defendant reflected for at least the time it took to reach Johnson before striking him." *Id.* Similarly, in *State v. Mallett*, 732 S.W.2d 527, 533 (Mo. banc 1987), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987), this Court stated that either the evidence that the defendant had to slip out of handcuffs before attacking the victim or that the first shot of the victim would have temporarily incapacitated him would give rise to the reasonable inference that the defendant deliberated before firing his last shots. Here the evidence indicates that defendant delivered one last stabbing blow to the victim's chest as he was pulled through a doorway, giving rise to an inference that defendant had at least a moment of reflection as the guards seized the victim before defendant rendered the final stab. Defendant's first point is denied.

Defendant next contends the trial court erred in refusing to submit his proffered instruction on voluntary manslaughter, a crime committed by a person who "[c]auses the death of another person under circumstances that would constitute murder in the second degree under subdivision (1) of section 565.021,[2] except that he caused the death *under the influence of sudden passion arising from adequate cause* (emphasis added)." § 565.023.1, RSMo. " 'Sudden passion' means passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation," § 565.002(7), and " '[a]dequate cause' means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." § 565.002(1).

A voluntary manslaughter instruction is typically justified when the victim perpetrates a battery upon the defendant, *State v. Singer*, 719 S.W.2d 818, 823 (Mo. App.1986), but the evidence on this point is inconclusive. There is no evidence that May (the victim) actually struck the first blow in his confrontation with defendant, though evidence was presented that May was attacking Herndon and when defendant yelled attempting to stop that assault, May turned to defendant and said, "You want some of this, too?" while advancing toward defendant. Though this evidence standing alone might suggest a marginal basis for a finding of sudden passion arising from adequate cause, it becomes untenable when considered in the light of all the circumstances. However, assuming *arguendo* that sufficient evidence exists to support submission of the manslaughter instruction, it has been held that where, as here, instructions are submitted on both

---

1. Unless otherwise specified, all statutory citations are to RSMo 1986.

2. The cited section provides that second degree murder occurs when one, "with the purpose of causing serious physical injury to another person, causes the death of another person."

first degree and second degree murder, and the jury finds the defendant guilty of murder in the first degree, it is unnecessary to decide whether there was sufficient evidence to support the manslaughter instruction, for "no reasonable basis exists to suggest that the jury would have exercised greater leniency and reduced the conviction to manslaughter." *State v. Merritt,* 734 S.W.2d 926, 932 (Mo.App.1987). Defendant cites *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), as authority for submission of the manslaughter instruction in this case, but such reliance is misplaced. In *Beck,* the Court ruled that the jury may not be precluded from considering lesser included offenses supported by the evidence in capital cases. However, *Beck* is factually inapposite because the jury here was instructed on the lesser included offense of second degree murder and thus was not precluded altogether from considering a lesser included offense. For the same reasons, we also rule against defendant his point, raised as plain error, that the trial court erred in failing to insert in the second degree murder instruction the paragraph stating that "defendant did not do so under the influence of sudden passion arising from adequate cause." MAI–CR3d 313.04.[3] *See State v. Hunter,* 755 S.W.2d 634, 638 (Mo.App.1988).

Defendant next asserts the trial court erred in admitting a photograph of the pool of blood left where the victim expired, in that the photograph was not relevant to any material issue in the case and served only to arouse passion and to prejudice the jury. "Photographs are generally admissible if they are relevant to a material issue;" for example, if "they enable the jury to better understand the testimony." *State v. Murray,* 744 S.W.2d 762, 772 (Mo. banc 1988), *cert. denied,* — U.S. —, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988). This demonstrative evidence was relevant to show the scene of the crime, *see State v. Guinan,* 665 S.W.2d 325, 331 (Mo. banc 1984), *cert. denied* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984), and helped the jury to understand the testimony of the correctional officers as to how they pulled the victim through the door and held him as he lay dying. The admissibility of such evidence is within the broad discretion of the trial court and is "erroneous only if the ruling resulted in fundamental prejudice and abuse of discretion." *State v. Clemons,* 643 S.W.2d 803, 805 (Mo. banc 1983). In this connection we note that photographs of the stab wounds on the victim were admitted which were arguably more gruesome than the photograph complained of, and numerous photos of bloodied stairwells were also introduced into evidence. These photographs were plainly relevant and admissible, *see id.,* and as the jury had already viewed these exhibits, it cannot be reasonably argued that defendant suffered "fundamental prejudice" from a picture of a puddle of blood. This point is denied.

## II.

Defendant requests plain error review of his remaining points, which were not previously raised and preserved for appellate review.[4]

### A.

Defendant first claims error in the submission of Instruction No. 18, pat-

3. We also note defendant's own submitted instruction failed to include this paragraph, the omission of which he now complains.

4. In this connection we note that appellant has exceeded the page limitations in his brief. Rule 84.04(i) provides that the appellant's brief shall not exceed 100 pages unless leave of Court is first obtained. Appellant was originally represented by trial counsel on this appeal and filed a nineteen-page brief. Appellant was granted leave to file a supplemental brief prepared by new counsel. Thereafter appellant, through present counsel, obtained leave to exceed our one hundred page limit by thirty additional pages. Counsel responded by filing a supplemental brief of 126 pages, resulting in a total of 145 pages between the two briefs. We hereby warn all counsel that in the future, portions of briefs exceeding our express page limitations will no longer be considered absent advance permission of this Court, and as required by the rule, only the Court may grant leave to exceed the express page limitations of the rule.

terned after MAI–CR3d 313.44, which read as follows:

If you decide that one or more sufficient aggravating circumstances exist to warrant the imposition of death, as submitted in Instruction No. 15, you must then determine whether one or more mitigating circumstances exist which outweigh the aggravating circumstance or circumstances so found to exist. In deciding that question, *you may consider* all of the evidence relating to the murder of Marlin May.

*You may also consider:*

1. Whether the murder of Marlin May was committed while the Defendant was under the influence of extreme mental or emotional disturbance.

2. Whether Marlin May was a participant in the Defendant's conduct.

3. Whether the Defendant acted under extreme duress.

4. Whether the murder of Marlin May was committed while the Defendant initially was acting in defense of another.

5. Whether the multiple stab wounds the Defendant received in August, 1986 contributed to his conduct.

*You may also consider* any circumstances which you find from the evidence in mitigation of punishment.

*If you unanimously find* that one or more mitigating circumstances exist sufficient to outweigh the aggravating circumstances found by you to exist, then you must return a verdict fixing the Defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole.

(Emphasis added.)

Defendant takes issue with the above-emphasized language in Instruction 18 that the jury "may consider" all of the evidence and circumstances and whether the enumerated mitigating circumstances existed. He first complains the instruction is contrary to § 565.032.1, RSMo, which states:

In all cases of murder in the first degree for which the death penalty is autho-

rized, *the judge* in a jury waived trial shall consider, or he *shall include in his instructions to the jury for it to consider:*

\*　　\*　　\*　　\*　　\*　　\*

(2) Any of the statutory mitigating circumstances enumerated in subsection 3 which are requested by the defendant and supported by the evidence;

(3) Any mitigating ... circumstances otherwise authorized by law and supported by the evidence....

Even a perfunctory glance at the statute and instruction would reveal that the statute merely requires that the judge shall include in his instructions mitigating circumstances for the jury to consider, and he did so here; nothing in the instruction and procedure employed here runs afoul the statute. However, defendant further argues the emphasized language of the instruction is contrary to the pronouncements of the United States Supreme Court in *Skipper v. South Carolina,* 476 U.S. 1, 8, 106 S.Ct. 1669, 1673, 90 L.Ed.2d 1 (1986) and *Eddings v. Oklahoma,* 455 U.S. 104, 113–15, 102 S.Ct. 869, 876–77, 71 L.Ed.2d 1 (1982), which stand for the proposition that the sentencer may not be precluded from considering mitigating evidence.

The situations in the cited cases differ widely from that at bar. In *Skipper,* 476 U.S. at 3, 106 S.Ct. at 1670, relevant mitigating evidence was excluded from presentation at the sentencing hearing, and in *Eddings,* the trial court in sentencing refused to consider defendant's emotional disturbance and troubled family upbringing as mitigating evidence. 455 U.S. at 109, 102 S.Ct. at 873. As stated in *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978), the sentencer may "not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." The instruction given here in no way runs contrary to the United States Supreme Court precedents, for the

jury was instructed that it "may consider" all of the evidence and circumstances and "may consider" whether the facts supported the enumerated mitigating circumstances. *See also Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988). *Compare Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); *Penry v. Lynaugh*, — U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). The jury was not precluded from considering mitigating evidence, and defendant has thus failed to establish error, much less plain error, as to this contention.

In a similar vein, defendant further attacks Instruction No. 18 as being contrary to *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), in stating that *"[i]f you unanimously find* that one or more mitigating circumstances exist sufficient to outweigh the aggravating circumstances found by you to exist (emphasis supplied)," the jury must fix the sentence at life without eligibility for probation or parole. Defendant contends the instruction may be reasonably understood by the jury to require that they unanimously find the existence of a particular mitigating circumstance before it could be weighed against the aggravating circumstances, and then they must unanimously find that these agreed upon mitigating circumstances outweighed the aggravating circumstances if they were to fix the punishment at life imprisonment rather than death. However, the verdict forms at issue in *Mills* were markedly different from the verdict forms used here. There the forms expressly stated that "[b]ased upon the evidence *we unanimously find that each of the following mitigating circumstances* which is marked 'yes' has been proven to exist by a preponderance of the evidence (emphasis added)," and that "[b]ased on the evidence we unanimously find that it has been proven by a preponderance of the evidence that the mitigating circumstances marked 'yes' in Section II outweigh the

aggravating circumstances marked 'yes' in Section I." 108 S.Ct. at 1871–72. In contrast, the language of the instruction at bar requires only that the jury be in unanimity in finding that mitigating circumstances outweigh the aggravating circumstances; the instruction does not require the jury to be unanimous in finding each mitigating circumstance, nor does it require the jury to be in agreement on which mitigating circumstances outweighed the aggravating circumstances before it might fix the sentence at life. In further contrast to *Mills*, the jury was given Instruction No. 19, which read:

> You are not compelled to fix death as the punishment even if you do not find the existence of one or more mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances which you find to exist. You must consider all the circumstances in deciding whether to assess and declare the punishment at death. Whether that is to be your final decision rests with you.

This instruction gave the jury the discretion to assess a sentence of life despite any possible findings of the lack of mitigating circumstances. In light of these circumstances, defendant has established no manifest prejudice or miscarriage of justice from the submission of Instruction No. 18. *See State v. Petary*, 781 S.W.2d 534, 543–544 (Mo. banc 1989); *see also Roberts v. State*, 775 S.W.2d 92, 96 (Mo. banc 1989) (Blackmar, C.J., concurring).[5]

### B.

Appellant contests the submission of his prior second degree murder conviction as an aggravating circumstance, claiming this was contrary to §§ 565.030 and 565.032, RSMo, and to his constitutional right to a jury trial. Section 565.032.2(1) provides that a prior conviction for first degree mur-

---

**5.** We note that MAI–CR3d 313.44 has since been amended, citing *Mills*. In light of our discussion above we find this amendment is not controlling in determining the impact of that decision on the prior instruction.

der or a "serious assaultive" crime is an aggravating circumstance, and Note on Use No. 4, MAI–CR3d 313.40, states that the court must determine whether a prior conviction is a "serious assaultive criminal conviction." Further, § 565.030.4(1) requires that aggravating circumstances to be considered must be found "beyond a reasonable doubt" by the trier. Defendant's contention is that the jury, rather than the court, must make the determination whether his second degree murder conviction was a "serious assaultive criminal conviction;" he attempts to define the aggravating circumstance as an element of the *discrete* crime of "capital murder."

■■■ Defendant's assertions are completely devoid of merit. First of all, "capital murder" is not a distinct crime under the Missouri statutory scheme; rather, in first degree murder cases the jury may be given the discretion to impose the death penalty if one or more enumerated aggravating circumstances exist. § 565.030. Secondly, the procedure employed here, in conformance with the MAI and accompanying notes, detracts in no way from the function of the trier of fact. The court must determine as a matter of law whether the prior conviction is a "serious assaultive criminal conviction," and then the jury is allowed to determine as a matter of fact whether defendant indeed had a prior conviction of second degree murder. Defendant has failed to establish here any constitutional or statutory violations as plain error or otherwise. Further, we find it difficult to dispute that a second degree murder conviction for shooting an eighty-six-year-old woman while defendant was attempting to break into her home was a "serious assaultive criminal conviction," and we note that even though the trial court did not make such a finding on the record, that factor in itself does not constitute plain error. *Clemmons*, 753 S.W.2d at 912.

■■■ Defendant contends that if we reject his preceding argument, which we do, the trial court plainly erred during the pen-

alty phase in admitting evidence of his prior convictions; he maintains that once the trial judge determined what was a "serious assaultive criminal conviction," evidence of the details of these prior offenses was more prejudicial than probative. In *State v. Schlup*, 724 S.W.2d 236, 238–40 (Mo. banc 1987), *cert. denied*, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987), this Court held that evidence of the details of prior crimes was essential for the jury to determine the existence of a "substantial history of serious assaultive convictions," § 565.012.2(1), RSMo 1978, which was an aggravating circumstance under the prior version of the statute. It is true that the statute has been amended to provide that "one or more serious assaultive criminal convictions" may be an aggravating circumstance, § 565.032.2(1), RSMo 1986, and as discussed above, the trial court makes the determination whether a conviction meets this criterion. However, defendant's other prior convictions, the burglary consummated in connection with the second degree murder and the escape from custody before conviction, were also submitted to the jury as additional circumstances for it to consider in compliance with § 565.032.1(3), which states that the jury instructions shall include "[a]ny mitigating or aggravating circumstances otherwise authorized by law *and supported by the evidence*, ... including any aspect of the defendant's character, [and] the record of *any prior criminal convictions* (emphasis added)." This Court has stated that the jury must "be given full information pertaining to the defendant, including his propensity for criminal activity, in giving consideration to the imposition of the death sentence." *State v. Gilmore*, 661 S.W.2d 519, 524 (Mo. banc 1983), *cert. denied*, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984). The details of these prior convictions are plainly relevant to his character, § 565.032.1(3), and to "his propensity for criminal activity." *Gilmore*, 661 S.W.2d at 524. As the aggravating circumstances, both statutory and nonstatutory, were clearly supported by the evidence, defen-

dant could not have been manifestly prejudiced by this evidence, and this point is therefore ruled against him.

### C.

■ Defendant next protests that in the penalty phase evidence was introduced that defendant was in the special management unit of the penitentiary and the prosecutor argued that defendant was there because he couldn't "conform to the rules." Defendant complains that this evidence is an additional aggravating circumstance and the state did not notify him in advance pursuant to § 565.005.1, RSMo, that it intended to introduce this evidence. This statute provides that a party, *upon request* of the opposing party, shall disclose a list of all aggravating or mitigating circumstances which that party intends to prove at trial. Defendant concedes he made no such request, although the state *ex gratia* provided him a list of aggravating circumstances intended to be proven. Defendant may not be heard to complain of any failure to provide the statutory notice when he failed to make the request required by the statute. *Mallett*, 732 S.W.2d at 537. Furthermore, there is no manifest prejudice or miscarriage of justice as a result of the evidence that defendant was in the special management unit rather than the general population of the prison. "The trial court has discretion during this stage of trial to admit any evidence it deems helpful to the jury in fixing punishment." *State v. Malone*, 694 S.W.2d 723, 727 (Mo. banc 1985), *cert. denied*, 476 U.S. 1165, 106 S.Ct. 2292, 90 L.Ed.2d 733 (1986). Once the evidence was admitted that defendant was in the special management unit, the prosecutor was free to draw a reasonable inference from that evidence that defendant failed to "conform to the rules." [6] The prosecution has the right to argue reasonable inferences from the evidence, *State v. McDonald*, 661 S.W.2d 497, 506 (Mo. banc 1983), *cert.*

*denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985), and the error, if any, in this regard cannot be said to rise to the level of plain error.

### D.

■ Defendant next raises an attack on the constitutionality of the Missouri death penalty statutes because they allow the prosecutor discretion to waive the death penalty. *See* §§ 565.004.4, 565.006.3, RSMo. We first note the oft-repeated rule that constitutional error must be raised at the earliest opportunity, with citations to the constitutional sections alleged to have been violated. *State v. Flynn*, 519 S.W.2d 10, 12 (Mo.1975); *State v. Moesch*, 738 S.W.2d 585, 587 (Mo.App.1987). However, reviewing the matter *ex gratia* for plain error, *see State v. Howard*, 540 S.W.2d 86, 87 (Mo. banc 1976), we note that such a contention has previously been rejected by this Court and the United States Supreme Court. *State v. Trimble*, 638 S.W.2d 726, 736 (Mo. banc 1982), *cert. denied* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983); *Gregg v. Georgia*, 428 U.S. 153, 199, 224–26, 96 S.Ct. 2909, 2937, 2948–50, 49 L.Ed.2d 859 (1976). Defendant further contends that such statutory provisions violate the separation of powers because the prosecutor is injected into the judiciary province. No controlling authority is cited and we find the claim meritless.

### E.

■ The prosecutor informed the jury during voir dire that although they would have to be in unanimous agreement if they imposed the death penalty, only the foreman would sign the jury form. He then inquired of the array whether they would be able to sign the form if a punishment of death were rendered; several venire members responded that although they were not opposed to capital punishment, they

---

**6.** Evidence was presented during the punishment phase of trial that individuals would be placed in the special management unit for their behavior in the institution or for the circumstances of their crimes.

would not want to be the ones to sign the form. Defendant alleges the prosecutor's manner of questioning sought a commitment from the jurors to act in a certain way, misled them, and misstated the law. This assertion is fallacious. "Counsel may ... probe the veniremen to determine preconceived prejudices that would preclude them from following the instruction in the case." *State v. Neal*, 591 S.W.2d 178, 182 (Mo.App.1979). Defendant's reliance on *Alderman v. Austin*, 663 F.2d 558 (5th Cir.1982), is misplaced, for there the death sentence was reversed when the prosecutor struck for cause three veniremen who indicated they could not sign a verdict of death as foreman of the jury. Such is not the case here, for none of the jurors so questioned were struck for cause. Defendant's contention fails the test of plain error.

### F.

■■■■ The next complaint raised by defendant is that the trial court erred in denying his motion for a continuance, in which he asserted that a delay was necessary to facilitate a requested mental examination. On appeal he argues an expert was needed to testify as to his mental condition in support of the mitigating factors submitted to the jury that defendant "was under the influence of extreme mental or emotional distress," that he "acted under extreme duress," and "[w]hether the multiple stab wounds the defendant received in August, 1986 contributed to his conduct."[7] It should first be noted that defendant had not requested a mental examination, and his motion for a continuance was not accompanied by an affidavit showing the materiality of the evidence expected to be obtained and showing the identity and content of the witness' expected testimony, as required by § 545.720, RSMo. This alone could warrant denial of defendant's contention. *See State v. Merrick*, 677 S.W.2d 339, 342 n. 2 (Mo.App.1984). How-

ever, reviewing further for plain error, *see State v. Nave*, 694 S.W.2d 729, 735 (Mo. banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1986), we find no manifest prejudice or miscarriage of justice resulting from denial of the continuance. During the penalty phase, defendant testified fully as to his mental condition in support of the mitigating circumstances submitted, and defense counsel effectively argued these points during closing argument. The granting or denial of a motion for a continuance is a matter within the discretion of the trial court, *Nave*, 694 S.W.2d at 735, and defendant has failed to demonstrate error here.

### G.

■■■ Defendant also charges plain error in certain comments made by the prosecutor during argument in the penalty phase of the trial. Such alleged errors in argument justify relief under plain error only if they are determined to have a decisive effect on the jury. *State v. Murphy*, 592 S.W.2d 727, 732 (Mo. banc 1979).

■■■ The prosecutor, referring to defendant's testimony that he didn't remember much about the incident, said he didn't know if defendant was "just a killing machine or what," and the prosecutor described this particular incident as a "killing spree." Defendant complains this was an argument of facts not in evidence, but the prosecutor is entitled to argue the evidence and the reasonable inferences therefrom. *Clemmons*, 753 S.W.2d at 908. Defendant levels the same allegation against the prosecutor's suggestion that the murder weapon was never found; he states there was never any testimony whether or not the knife was found. From this, it is a reasonable inference that the weapon was not found.

■■■ Defendant further claims the prosecutor argued defendant's future criminal

---

**7.** Defendant presented evidence that he had been the victim of a knife attack in August 1986

in the dining hall of the penitentiary.

conduct when he stated that defendant had an "outdate" for his previous sentences and "I hope that's a little scary." The comment did not directly refer to future criminal conduct on the part of defendant, and assuming *arguendo* that it did, this Court has allowed latitude for such argument in the sentencing phase of trial. *State v. Antwine*, 743 S.W.2d 51, 71 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). It cannot be said that the comment had a decisive effect on the jury's determination. *See State v. Long*, 768 S.W.2d 664, 666–67 (Mo. App.1989).

■■■ Defendant next accuses the prosecutor of personalized vouching. However, the prosecutor's comment that one of the hardest things he has to do is ask the jury to impose the death penalty was favorable to defendant rather than prejudicial. The prosecutor also rhetorically asked the jury when the death penalty would be imposed if not in a case like this, and whether such a task would be left to other juries. He also stated that he would have loved to have shown the knife to the jury if it had been found. Again, such argument cannot be said to have had a decisive effect on the jury's determination.

■■■ Defendant maintains the following excerpt from the prosecutor's argument restricted the jury's consideration of mitigating evidence (mercy) by turning it into an aggravating factor:

> What they're really trying to ask you about is mercy, folks. That's a little bit different from justice. Nobody accuses our criminal justice system of being overly harsh, at least nobody I've ever heard. We're not exactly noted for the harshness. And there's not necessarily anything wrong with that per se. But when the system starts to dish out mercy rather than justice as a rule, when it becomes a standard affair, it's not really mercy any more, it's just weakness. And then it's not really a system of decent justice any more ... I don't ask for vengeance,

not mercy, but justice. And in this case, the justice is the imposition of the death penalty.

This argument does not constitute plain error. The prosecutor asked for justice in the case, and specifically stated that he did not ask for vengeance, or for mercy, but justice; the statement is merely an expression of the simple concept, wholly consistent with our law, that mercy is not necessarily justice in every case. The argument in no way precluded the jury from considering mercy, as it has the right to do pursuant to § 565.030.4, RSMo, by imposing a life sentence rather than capital punishment. *See Clemmons*, 753 S.W.2d at 910.

■■■ Defendant finally contends the prosecutor's closing argument as a whole was inflammatory and prejudicial. Having addressed defendant's specific complaints, and having reviewed the argument as a whole, we find no manifest prejudice such that the jury's determination would have been decisively affected. Defendant's contentions as to the closing argument are denied.

## H.

■■■ The final point advanced by defendant asserts plain error in the submission of Instruction No. 8 on defense of another person. That instruction, patterned after MAI–CR3d 306.08, directed the jury as follows:

> One of the issues in this case is whether the use of force by the defendant against Marlin May was in defense of another person. In this state, the use of force (including the use of deadly force) to protect another person from harm is lawful in certain situations.
>
> A person can lawfully use force to protect another person against an attack, unless, under the circumstances as he reasonably believes them to be, the person he seeks to protect would be (sic) justified in using such force to protect himself. A person who is not under attack from a third person would not be

justified in using force against that third person to protect himself. If, under the circumstances as a person reasonably believed them to be, the person he seeks to protect was not under attack from the third person, then he is not entitled to use force against such third person to protect the other person.

In order for a person lawfully to use force in defense of another person, suich (sic) a defender must reasonably believe that person he is trying to protect is in imminent danger of harm from a third person. The person he is trying to protect need not be in actual danger but the defender must have a reasonable belief that the person is in such danger.

If the person trying to protect another person has such a belief, he is then permitted to use that amount of force which he reasonably believes to be necessary to protect the other person.

But a person acting in the defense of another person is not permitted to use deadly force, that is, force which he knows will create a substantial risk of causing death or serious physical injury, unless he reasonably believes the person he is trying to protect is in imminent danger of death or serious physical injury.

And even then, a person may use deadly force only if he reasonably believes the use of such force is necessary to protect the other person.

As used in this instruction, the term "reasonable belief" means a belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

On the issue of the defense of another person in this case, you are instructed as follows:

\* \* \* \* \* \*

If, under the circumstances as the defendant reasonably believed them to be, Demetrius Herndon was under attack from Marlin May, and if the defendant reasonably believed Demetrius Herndon was in imminent danger of death or serious physical injury from the acts of Marlin. May and he reasonably believed that the use of deadly force was necessary to defend Demetrius Herndon,

then he acted in lawful defense of another person and he must be found not guilty.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

Defendant maintains that by this instruction he was unduly prejudiced in that there was no evidence that Demetrius Herndon was not justified in using force in self defense and that such was apparent to defendant. He further contends that there was a typographical error in the instruction and that the instruction improperly limited the circumstances in which a person could use deadly force in defense of another person only to the situation where the third person is under an actual attack from the aggressor.

The second paragraph of the instruction tracks Part A[1] of MAI–CR3d 306.08, which is to be used "only if there is evidence that the person being defended was *not* justified in using force in self-defense." We agree that use of this paragraph appears to be erroneous, for the evidence indicates that Herndon was justified in using force in his own defense. However, in order for instructional errors to rise to the level of plain error, the trial court must so misdirect the jury as to cause manifest injustice, *State v. Moland*, 626 S.W.2d 368, 370 (Mo.1982),[8] and defendant has failed to make such a showing here. Even if the second paragraph was erroneously sub-

**8.** Furthermore, defendant concedes that this instruction was apparently tendered by his own counsel, and under our previous authorities, defendant should not be allowed to charge prej-

mitted, the instruction was correct in submitting that a person may use deadly force ("force which he knows will create a substantial risk of causing death or serious physical injury") "only if he reasonably believes the use of such force is necessary to protect the other person." It is questionable whether defendant was justified in using deadly force at all on Mays, and the evidence is uncontradicted that defendant went far beyond any conceivable need to protect Herndon or himself, as he stabbed May a total of nineteen times and continued stabbing while May attempted to ward off the blows, in spite of attempts by the prison guards to intervene. The testimony is uncontradicted that May was disarmed in the midst of this fight, yet defendant continued to stab him.

 Defendant further claims prejudice from the second paragraph on account of a typographical omission. The instruction read: "A person can lawfully use force to protect another person against an attack, unless, under the circumstances as he reasonably believes them to be, the person he seeks to protect *would be justified* in using such force to protect himself (emphasis added)." The emphasized portion should have read "would *not* be justified." The omission is obvious from the context. The instruction continues:

> A person who is not under attack from a third person would *not* be justified in using force against that third person to protect himself. If, under circumstances as a person reasonably believed them to be, the person he seeks to protect was *not* under attack from the third person, then he is not entitled to use force against such third person to protect the other person.

(Emphasis supplied.) Under these circumstances we cannot conclude defendant was manifestly prejudiced by the instruction.

 For his final attack on the instruction, defendant complains that in providing that he was not entitled to use force against May if "the person he seeks to protect *was not under attack* (emphasis added)," the instruction improperly limits the circumstances in which he would be justified in defending Herndon. Section 563.031, RSMo, provides that one may use force to defend another person "from what he reasonably believes to be the use *or imminent use* of unlawful force by such other person (emphasis added)." The instruction specifically provided that "[t]he person he is trying to protect need not be in actual danger but the defender must have a reasonable belief that the person is in such danger." Further, there is no contradiction in the evidence that Herndon was under attack from May, thus the instruction conformed to the evidence and defendant's argument must be rejected.

### III.

 And finally we reach the point for our independent review of the death sentence as mandated by § 565.035.3, RSMo. Pursuant to the first subdivision of this statute, we must determine whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. Our discussion to this point has already countered numerous arguments that defendant was manifestly prejudiced or that justice was somehow miscarried by the asserted trial errors. Having fully considered multifaceted attacks on the sentence and having made our independent review, we do not find that the sentence was imposed as a result of passion, prejudice, or any other arbitrary factor. The evidence is clear and uncontradicted that defendant killed Marlin May after stabbing him repeatedly in a prolonged assault. Further, under the second prong of our mandatory analysis, § 565.035.3(2), it is beyond cavil that defendant had a previous conviction for second degree murder (a "serious assaultive criminal conviction") and was already an inmate at the Missouri State Penitentiary when the murder of Marlin May occurred, thus these

udice or error thereby. *State v. Euell,* 583 S.W.2d 173, 178 (Mo. banc 1979).

two statutory aggravating circumstances were properly found by the jury. Further, the evidence establishes that appellant also had prior convictions for burglary and escape from custody. Reviewing the record as a whole, we find the sentence of death in this instance to be well-justified and neither arbitrary nor capricious.

We must finally determine "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant." § 565.035.3(3), RSMo. Defendant was twenty-six years old at the time of the incident, and as discussed above, had a substantial history of prior convictions, including second degree murder. We have affirmed the death penalty for a myriad of other killings by incarcerated defendants. *E.g., State v. Smith*, 756 S.W.2d 493 (Mo. banc 1988), *cert. denied*, — U.S. —, 109 S.Ct. 823, 102 L.Ed.2d 812 (1989); *State v. Schlup*, 724 S.W.2d 236; *State v. O'Neal*, 718 S.W.2d 498 (Mo. banc 1986), *cert. denied*, 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987); *State v. Zeitvogel*, 707 S.W.2d 365 (Mo. banc 1986), *cert. denied*, 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986); *State v. Bolder*, 635 S.W.2d 673 (Mo. banc 1982), *cert. denied*, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). Defendant attempts to distinguish those cases in that the executions were planned or executed by multiple actors, or else the defendant was already serving a life sentence for a previous murder conviction. However, as noted earlier, defendant's assault upon the victim bears some similarity to the attack instigated in *State v. Clemmons*, 753 S.W.2d 901, which was executed solely by the defendant and apparently without prior planning. Further, the death penalty has been upheld in numerous cases of prison killings where the defendant had no prior life sentence and in some cases no previous murder conviction at all. *State v. Amrine*, 741 S.W.2d 665 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988); *State v. Antwine*, 743 S.W.2d 51; *State v. Roberts*, 709 S.W.2d 857 (Mo. banc 1986), *cert. denied*, 479 U.S. 946, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986). Defendant's prior conviction and twelve-year sentence for second degree murder did not deter him from killing again, and we fail to see what further deterrent value a life sentence might have in this instance. Therefore "the jury could rightly conclude that no measure short of the death penalty was appropriate in this case." *Roberts*, 709 S.W.2d at 870 (quoting *Guinan*, 665 S.W.2d at 332). As this Court has previously stated, we have "not hesitated to affirm death penalties imposed on inmates in the killing of other inmates to signal that there is a 'real cost for prisoners who kill while in confinement.'" *Id.* (quoting *Bolder*, 635 S.W.2d at 690). The death penalty here is neither excessive nor disproportionate to the punishment imposed in similar cases.

The judgment is affirmed.

ROBERTSON, HIGGINS and COVINGTON, JJ., and CARL R. GAERTNER, Special Judge, concur.

BLACKMAR, C.J., concurs in separate opinion filed.

BILLINGS, J., concurs in separate opinion filed.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.

BLACKMAR, Chief Justice, concurring.

I.

As the principal opinion points out, there was no error in the failure to submit a voluntary manslaughter instruction, because the jury had the opportunity to mitigate when it was instructed that it could find the defendant guilty of second degree murder, and did not avail itself of that opportunity. I agree thoroughly with the holding of *State v. Merritt*, 734 S.W.2d 926 (Mo.App.1987). The omission of a man-

slaughter instruction, whether required or not, was not prejudicial.

The discussion as to whether a manslaughter instruction is required, then, is not necessary, and, in my opinion, unwise. I am particularly concerned about such expressions as "the evidence on this point is inconclusive" and "though this evidence standing alone might suggest a marginal basis for a finding of sudden passion arising from adequate cause, it becomes quite untenable when considered in the light of all the circumstances." In determining whether the defendant is entitled to an instruction, the court should consider only the evidence favorable to the defendant, and should give the defendant the benefit of inferences which may be drawn from the evidence. Even marginal theories should be submitted.

The principal opinion speaks as though the defendant had some burden to introduce evidence, and suggests that the trial judge may weigh evidence in deciding whether to submit the defendant's request. This is heresy, and can bring only trouble. The prosecutor was ill-advised to resist the manslaughter instruction, and the trial judge should have given it. Because the point is immaterial I omit discussion of the evidence in detail, but it persuades me that there was a tenuous basis for a manslaughter finding. That this evidence was unconvincing to me, and probably would not persuade the jury, makes no difference. It is not for us to say whether or not the evidence is convincing.

## II.

I cannot understand the intimation in footnote 4 of the principal opinion, and in Judge Billings' opinion, that there was a violation of the rules in the defendant's briefing. Leave of court for a brief in excess of 100 pages was first obtained, as specified in Rule 30.06(i).

The rules also permit counsel to argue "plain error." This does not mean that the

extensive briefing of points of error which have not been preserved, in the same manner as preserved points is helpful or effective. Cases in which there have been reversals for plain error are rare indeed. If counsel thinks that a point may meet the plain error standard, it should be possible to say so in a very few words. The random briefing of unpreserved points may not be sound advocacy.

I also find it necessary to comment on Judge Billings' gratuitous attack on lawyers who raise points of ineffective assistance of counsel in postconviction proceedings.[1] A convicted defendant is entitled to challenge his conviction by charging that trial counsel was ineffective to such an extent that sixth amendment rights were violated. We have held that Rule 29.15 is the exclusive means for making this claim. *State v. Wheat*, 775 S.W.2d 155 (Mo. banc 1989). The defendant is told that the claim must be made within thirty days after the record on appeal is filed. A transcript is provided and counsel furnished for indigent defendants. The defendant is advised that the claim is forever barred if not timely raised. *Day v. State*, 770 S.W.2d 692 (Mo. banc 1989).

Counsel appointed for Rule 29.15 litigants owe duties only to their client. An attorney violates no rule of ethics in pursuing a claim that the client is entitled to make. This may include the unpleasant duty of challenging the performance of trial counsel. Motion counsel may have to proceed with complaints they do not necessarily agree with, if there is an arguable basis for them.

Those who have represented capital defendants, whether at the trial or appeal stage, realize that such defense is extremely difficult. Penalties for a misstep may be severe. Counsel operate under the specter of such cases as *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), *Dugger v. Adams,*·—— U.S. ——, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989), in

---

1. The attack is gratuitous because there is no issue of ineffective assistance of counsel in the

present case. The defendant failed to file a timely motion under Rule 29.15.

which defendants were executed because counsel did not choose to include possibly meritorious points in their initial appellate proceedings. Judges may appropriately comment on the effectiveness of the performance of defense counsel and, for that matter, of the prosecution, but lawyers should not be criticized for doing their duty as they see it.

With these observations, I concur in the principal opinion.

BILLINGS, Judge, concurring.

I concur in the principal opinion and write only to further call attention to continued rule violations by some attorneys that represent defendants in appeals to this Court, both direct appeals and post conviction proceedings. And, so long as this Court countenances such violations they will continue. As Judge Rendlen has noted in the principal opinion, the page limitation for briefs is habitually flaunted and disregarded. Of equal importance is the use and abuse of so-called plain error assignments by counsel, particularly in death penalty cases.

In this case, point after point is asserted in appellants brief that were not objected to at trial and not carried forward as an assignment of error in the motion for new trial—all squarely in violation of the rules and case law of this Court. In recent years some public defenders have grown accustomed to defaming fellow attorneys and charging them with derelictions, contrary to the rules of ethics governing attorneys. Such alleged derelictions can lead to defamation suits by wrongfully maligned attorneys, as well as possibly giving rise to malpractice claims by defendants.

It is no answer to suggest the ends justify the means because the death penalty is involved. The rules should be strictly enforced and the Court should not permit different rules because the death penalty has been assessed. This Court is under legislative mandate to review such cases and the rules of recognized and sound judicial procedure should not be disregarded in the process. Plain error review should be the exception, not the rule, of review. And, when the Courts rules and decisions for appellate review have not been followed, such afterthought assignment of errors should be declared procedurally barred. *Harris v. Reed,* —— U.S. ——, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

Here, appellant's initial brief assigned three points of error, only two of which were properly preserved for appellate review. The supplemental brief contained 12 points and some additional sub-points as assignment of error for plain error review. Only one point of the supplemental brief had been properly preserved. It appears obvious that the second appellate brief writer has seined the trial transcript for alleged trial errors and advanced them for plain error review.

The same public defender that filed the so-called "supplemental brief" in this case also filed a 150–page brief in *State v. Petary,* 781 S.W.2d 534 (Mo. banc 1989). The brief contained only three points that were properly preserved for appellate review. In addition, 14 additional points were asserted as reviewable under the plain error rule.

Plain error review is specifically limited by *Rule 30.20.* The rule provides as follows:

> Allegations of error that are not briefed or are not properly briefed on appeal shall not be considered by the appellate court except errors respecting the sufficiency of the information or indictment, verdict, judgment, or sentence. Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

The bottom line is that unless the Court finds that manifest injustice or miscarriage of justice has resulted, assignments not raised at trial and preserved in the motion

for new trial are deemed waived and should be procedurally barred. In future days those same alleged trial errors will probably be asserted as grounds for federal habeas corpus relief. This writer is aware that federal habeas corpus has provided a safe and peaceful harbor where the death penalty has been assessed. Witness this Court's affirmation of the death penalty in 59 cases since 1981 and only one case having made it through the federal system and the sentence carried out. As Justice Hickman of the Supreme Court of Arkansas said in *Fretwell v. State*, 289 Ark. 91, 708 S.W.2d 630, 635 (1986):

> If the review process, which is directed and controlled by the federal courts, continues to require about ten years and at least seven or eight separate reviews to approach finality, then the process is not just inefficient, it is a failure. A legal system such as ours which fails to honestly, directly, and efficiently address legal questions of this magnitude will lose the most important foundation stone of that system—the respect of the people.

Justice Hickman's record keeping in that case and other Arkansas death penalty cases led to post conviction proceedings being abolished by the Supreme Court of Arkansas in *Whitmore v. State*, 299 Ark. 55, 771 S.W.2d 266 (1989).

This Court has taken steps to insure that death penalty cases are processed in an expeditious but orderly fashion in the trial courts. However, this effort is for naught where repeated extensions of time are granted for the filing of the record, transcript, and briefs on appeal. Again, the rules are being abused by those who seek delay for no other reason than to delay proceedings in this Court, all the while conjuring up additional "plain errors".

This writer suggests the day may not be too far away for this Court to follow Arkansas' lead and abolish post conviction proceedings in Missouri—the spirit of comity and federalism notwithstanding.